JOHN THOMAS KAVANAUGH, Plaintiff-Appellee, v. INTERSTATE FIRE AND CASUALTY COMPANY et al., Defendants-Appellants.

First District (5th Division) No. 59541

Rehearing denied February 11, 1976.

Opinion filed October 10, 1975.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller and Hugh C. Griffin, of counsel), for appellant Interstate Fire and Casualty Co.

Menk, Johnson & Bishop, of Chicago (John C. Menk, of counsel), for appellant Royal Indemnity Co.

Leonard M. Ring, of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants appeal from a judgment for plaintiff (hereinafter Kavanaugh) in the amount of $20,000 representing Kavanaugh's excess liability above his combined insurance policy limits. Defendant, Royal Indemnity Company (Royal), also appeals from a separate judgment of $25,000 in punitive damages in Kavanaugh's favor. Both defendants contend that the trial court erred when it did not grant a directed verdict or a judgment *n.o.v.* since Kavanaugh's evidence did not prove that defendants breached any duty owed him under their insurance policies. Royal additionally contends that the court erred when it: (1) refused to withdraw Kavanaugh's willful and wanton count from the jury's consideration, (2) allowed Kavanaugh to admit Royal's balance sheet in evidence, (3) commented during the direct examination of one of Royal's witnesses, and (4) admitted the testimony of Kavanaugh's expert witness.

Interstate additionally contends that the trial court erred when it: (1) imposed a duty upon the insurance company to settle within the policy limits when there was no opportunity to settle, (2) found that it caused Kavanaugh's loss, (3) allowed Kavanaugh to amend his complaint at trial and gave certain prejudicial instructions based upon those

amendments, and (4) restricted their cross-examination and refused to admit certain documentary evidence.

In September, 1965, prior to the instant action, Kavanaugh had been a codefendant in a suit brought by Carol Sheehan in the United States District Court for the Northern District of Illinois, Eastern Division. (*Carol Sheehan v. Verne F. Dennis, et al.*, No. 62 C 588.) Sheehan was the injured passenger in Kavanaugh's automobile when it collided from behind with a truck on the East-West Tollway on August 9, 1961. At the time of the collision the truck was itself being towed by another codefendant's tractor. The Sheehan suit alleged negligence on the part of the trucking and towing companies, and willful and wanton conduct on the part of Kavanaugh in violation of the Illinois Guest Statute. Sheehan was represented at trial by her attorney, James Dooley.

At the time of the collision, Kavanaugh had personal liability insurance coverage with Royal covering losses to one person in the amount of $10,000. In addition to this primary coverage, Kavanaugh also had $15,000 excess coverage from Interstate. Under the terms of its policy, Royal's counsel, Donn Johnson, represented Kavanaugh in the Sheehan case. While Interstate did not represent Kavanaugh in that case, the record discloses that its attorney, Clark King, was aware of the progress of the trial.

The jury in the bifurcated Sheehan case returned a finding of liability against Kavanaugh alone on September 30, 1965. On October 4, 1965, the jury assessed damages against Kavanaugh in the amount of $45,000, thus exposing Kavanaugh to personal liability for $20,000 in excess of his combined insurance coverage.

On November 2, 1967, Kavanaugh commenced the instant suit in the circuit court of Cook County against Interstate alone. It went to trial on his amended complaint against both Royal and Interstate. In Count I of his amended complaint Kavanaugh alleged that Royal knew or should have known that Sheehan's claims exceeded the $10,000 policy limit; that it was Royal's duty to attempt to settle the claim within policy limits; that Royal's attorney wrongfully represented Kavanaugh's coverage to be only $10,000 to Sheehan's attorney, Dooley, and then refused to settle for more than $7,500 despite Dooley's offer to settle for $10,000; that both Royal and Interstate tendered $25,000 in settlement after the finding on Kavanaugh's liability and before the $45,000 damages verdict was returned, but Sheehan refused to settle; that Royal's failure to settle was deliberate, willful and arbitrary in breach of its obligation to Kavanaugh. In Count II of his amended complaint, Kavanaugh alleged that Interstate knew or should have known that Sheehan's claims ex-

ceeded the policy limits; that it was Interstate's duty to settle this claim on Kavanaugh's behalf within policy limits; that Interstate's liability arose on September 30, 1965, when Royal tendered the full amount of its primary coverage in open court, but Interstate failed to accept or otherwise respond to a settlement; that Interstate's failure to tender its $15,000 limit prior to a finding on liability was deliberate, willful and arbitrary entitling Kavanaugh to punitive and exemplary damages. In both counts Kavanaugh prayed for $20,000 in actual damages and $250,000 in punitive damages.

Royal filed a motion to dismiss Kavanaugh's amended complaint on the grounds that Kavanaugh's loss was occasioned by Interstate's, not Royal's, refusal to tender; that punitive damages were unprecedented; and that no cause of action was stated. Royal's motion was denied on November 6, 1970.

Interstate's answer denied that Sheehan offered to settle the case for $25,000 at any time and that it had breached its legal or contractual duties.

The following pertinent evidence was adduced at trial.

*James Dooley*

He is the attorney who represented Carol Sheehan in the personal injury suit against Kavanaugh. He summarized the circumstances of the accident as they appeared from the depositions of witnesses including the statement of Sheehan that Kavanaugh was only going 60 miles per hour and that she had not remonstrated him for improper driving. Sheehan suffered multiple lacerations on her face, a compound fracture of the left elbow joint, a compound fracture of the right femur, and injury to one clavicle. She lost $13,000-$21,000 in earnings and her medical expenses as of the time of trial were over $11,000. He first discussed a settlement with Royal's attorney, Donn Johnson, in July, 1965. Johnson stated that Kavanaugh only had a policy for $10,000 with Royal. When he asked why Royal would not pay on the policy, Johnson said he could only pay $8,500. A second offer to settle was made at the pretrial conference. At that time, he demanded $60,000 from all defendants to settle the case. After some discussion, the $60,000 offer was rejected. However, Royal did offer its $10,000 limit in open court on September 29, 1965, but its offer did not include Interstate's $15,000 limit as Johnson was unable to communicate with them. On cross-examination, he stated that he "stood on sixty" as a settlement figure once the case went to trial.

*John Thomas Kavanaugh*

He is the insured plaintiff in the instant action. He first told Johnson about the $15,000 excess coverage in August, 1964. Although he dis-

cussed the possibility of settling the Sheehan case with Johnson, he never specifically directed Johnson to offer the $10,000 Royal policy limit. Interstate had no representative present at these settlement discussions:

*Clark King, Jr.*

He is the attorney who represented Interstate in the Sheehan case. Interstate first received notice of the accident in August, 1964. He recommended that Interstate reserve $14,000 to $16,000 to cover their possible obligation in the suit. He spoke to Johnson six to twelve times before trial, but he never heard a settlement offer of less than $60,000 from Dooley. After the court denied Kavanaugh's motion for a directed verdict and the day before the Sheehan case went to the jury on the liability issue, Johnson told him that Royal would offer their $10,000 primary policy limits. The next day the jury found Kavanaugh liable and within 48 hours Interstate offered its $15,000. The issue of damages was not tried until several days later. He explained that after the court refused to direct a verdict in favor of Kavanaugh, he still felt that since this was a guest case and other defendants might be found liable, he would await the jury's verdict before tendering the policy limits. He also stated that Interstate's $15,000 limit was not offered earlier because it would not settle the case in light of Dooley's trial demand of $75,000.

*Donn Johnson*

He is the attorney who represented Kavanaugh in the Sheehan case on behalf of Royal. Carol Sheehan gave an explicit statement to his investigator that there was absolutely nothing wrong with Kavanaugh's driving on the night of the accident. Given the lesser standard of care under the guest statute and Sheehan's exonerating statement he felt that Kavanaugh would succeed on a motion for directed verdict at the close of all the evidence. He first told Dooley of the excess coverage at the pretrial conference. He discussed the Royal policy and settlement with Dooley in July, 1964, outside the Federal Building. He did so again in the corridor outside the courtroom after his motion for directed verdict was denied. At the second conference Dooley refused to settle for Royal's $10,000 limit and added that he would not settle "even if you give me the full twenty-five thousand dollars." He formally tendered Royal's $10,000 in open court on September 29, 1965, and the $25,000 combined coverage, at Interstate's request, on October 1, 1965. Kavanaugh never demanded that he offer to settle for the Royal's limits. He stated that Victor Cassato, an associate who represented his firm at a 1962 deposition, never told of an alleged offer to settle for $10,000 from an associate in Dooley's firm.

On cross-examination he could not remember the specific date of the discussion outside the Federal Building.

*Leonel Hatch*

He is the attorney who represented Kavanaugh's codefendants, Safeway Truck Lines and Robert Lees, in the Sheehan case. He confirmed that Dooley's offers to settle with all defendants were in the amounts of $60,000 at the pretrial conference and $75,000 during the trial. Prior to the selection of the Sheehan jury, there was an indication that Kavanaugh had $25,000 in coverage available.

*James Dooley recalled by Kavanaugh*

He denied having any settlement conversation with Johnson in the corridor outside the courtroom. He first learned of the excess policy on September 29, 1965, when Johnson tendered Royal's limits in open court. He never refused to settle for the full $25,000.

At the close of all the evidence, Kavanaugh moved to file a second amended complaint to conform the pleadings to the proof. Instead of an allegation that defendants failed to accept a Sheehan offer to settle for $25,000, Kavanaugh alleged that both defendants failed to offer their policy limits before Kavanaugh was found liable. Defendants moved for a mistrial on the ground that the new allegation substantially changed the theory of the case to defendants' immediate and irreparable harm. The trial court denied the motion and instructed the jury under the new allegations.

On July 19, 1972, judgment was entered on the jury verdict in favor of Kavanaugh and against both defendants for $20,000 plus interest, and against Royal alone for $25,000 punitive damages. Defendants post-trial motion praying, *inter alia*, for judgment *n.o.v.* was denied and this appeal followed.

OPINION

Defendants first contend that the trial court erred when it failed to grant both Royal's and Interstate's motion for judgment *n.o.v.* They argue that Illinois law imposes no absolute duty upon an insurer to offer its policy limits in order to effect a settlement.

We must view all the evidence in its aspect most favorable to Kavanaugh in considering whether a judgment *n.o.v.* should have been granted and determine that the evidence so overwhelmingly favors the defendant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.) When viewed in this light we must assume that Johnson did not disclose the excess coverage until the in-court offer to settle after the denial of his motion for a directed verdict, that Royal's first offer to settle for its full $10,000 limit did not occur until that same time, and that Interstate's first offer to settle for its full $15,000 limit came within 48 hours after the judgment on liability, but before the final judgment on damages.

■■ Numerous decisions by this court and the Seventh Circuit Court of Appeals recognize the principle that an insurer must act as a fiduciary to its insured and may not act negligently nor in bad faith towards the best interests of the insured. (*Olympia Fields Country Club v. Bankers Indemnity Insurance Co.*, 325 Ill.App. 649, 60 N.E.2d 896; *Ballard v. Citizens Cas. Co.* (7th Cir. 1952), 196 F.2d 96.) Nonetheless, an insurer's refusal to settle within policy limits does not render it liable *per se* to its insured. *Powell v. Prudence Mutual Casualty Co.*, 88 Ill.App.2d 343, 232 N.E.2d 155.

■■ In the instant case, Kavanaugh's proof and the allegations in his second amended complaint were based upon the theory that defendants had a legal duty to offer their policy limits before Kavanaugh was found liable. Even when we view the facts to show that the first offers to settle for the policy limits occurred late in the trial proceedings, we cannot hold that the law imposes a duty on an insurance company to initiate negotiations to settle a case. As this court has stated in *Oda v. Highway Insurance Co.*, 44 Ill.App.2d 235, 253, 194 N.E.2d 489, 499, "[t]o impose such a duty upon it would be to put it at a negotiating disadvantage not imposed on any other litigant." Illinois law does not demand that an insurer must settle within policy limits without exception or else invariably suffer the consequences of an excess liability judgment for breach of its fiduciary duty.

■■ There is a well-recognized exception to the general principle when the probability of an adverse finding on liability is great and the amount of probable damages would greatly exceed the coverage. Thus, in *Bailey v. Prudence Mutual Casualty Co.* (7th Cir. 1970), 429 F.2d 1388, defendant acted in bad faith when it failed to settle within its policy limits on four separate occasions, told plaintiff not to retain private counsel, and failed to advise plaintiff of the adverse verdict and the statutory time to appeal. Similarly, in *Smiley v. Manchester Insurance & Indemnity Co.*, 13 Ill.App.3d 809, 301 N.E.2d 19, and in *Cernocky v. Indemnity Insurance Co.*, 69 Ill.App.2d 196, 216 N.E.2d 198, the insureds made numerous demands upon the insurers to accept offers to settle within the policy limits when the probability of favorable liability findings were minimal. The insurers' failures to settle were held to be negligent and bad faith breaches of their duty to the insured.

The exception clearly does not apply to the facts in the instant case. Here, the issue of liability was not clear cut. Kavanaugh was subject to a low degree of care under the Illinois guest statute whereas his codefendants were charged with simple negligence, thus favoring his probability of success. Moreover, Johnson possessed a statement from the claimant Sheehan exonerating Kavanaugh from any charge of speed-

ing and admitting that she had never questioned his ability to control the automobile on the night of the accident. Trial attorneys are not endowed with the gift of prophecy so as to be able to predict the precise outcome of personal injury litigation. Nor does the mere fact that the insurance company was unsuccessful in the trial of a case show that their defense was made in bad faith. See *Ballard v. Citizens Cas. Co.* (7th Cir. 1952), 196 F.2d 96.

■■ In addition, when Royal's motion for a directed verdict was denied, Johnson offered Royal's limits. Likewise, when King received Johnson's report that the motion had been denied and that Royal had offered its limits, he authorized Johnson within 48 hours to offer Interstate's full limits also.* The fact that the jury returned an adverse verdict on the liability issue in the interim between Royal's offer and Interstate's offer does not belie the evidence which shows that King acted reasonably in adding Interstate's limits to Royal's pending settlement offer. Therefore, we hold that neither Royal, through Johnson, nor Interstate, through King, were negligent or in bad faith before offering their policy limits.

In light of our decision the order denying the defendants' motion for judgment *n.o.v.* is reversed and the cause is remanded with directions to enter judgments *n.o.v.* in favor of defendants.

Reversed and remanded with directions.

BARRETT, P. J., and DRUCKER, J., concur.

---

* Interstate's excess coverage policy provided that "[l]iability under this policy shall not attach unless and until the primary insurers have admitted liability for the primary limit or limits, or unless or until the assured has, by final judgment, been adjudged to pay a sum which exceeds such primary limit or limits."