MARGARET ADDUCI *et al.*, Plaintiffs-Appellants, *v.* VIGILANT INSURANCE COMPANY, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 80-2405

Opinion filed July 14, 1981.—Rehearing denied August 18, 1981.

Louis G. Davidson & Associates, Ltd., and Durchslag & Durchslag, both of Chicago (Keith L. Davidson, of counsel), for appellants.

John E. Guy, of Abramson & Fox, of Chicago, for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiffs Margaret and Joseph Adduci (the Adducis) filed a two-count complaint against defendants Vigilant Insurance Co., Inc., and Chubb & Son Insurance Co. (hereinafter collectively referred to as Insurer). The Adducis sued as the assignees of Insurer's insured, Connie Mihelich Contursi (Insured), asserting Insured's claim for recovery of that portion of a judgment against Insured which exceeded the limits of coverage of her insurance policy with Insurer. The trial court granted Insurer's motion to dismiss both counts of the Adducis' amended complaint.

The Adducis ask this court to decide whether (1) they have alleged sufficient facts in their amended complaint to state a cause of action for Insurer's alleged bad faith refusal to settle, within their policy limits, a civil action against Insured; and (2) Illinois law should recognize a duty on the part of an insurer to treat the insured's interests as paramount to its own in undertaking policy-related actions.

As a consequence of the trial court's disposition of the case, the facts available from the record come entirely from the complaint and the parties' briefs concerning Insurer's motion to dismiss the complaint.

Insured had contracted with Insurer for coverage under an accident

and casualty liability insurance policy. Among that policy's provisions was a $25,000 single bodily injury liability limit.

On May 10, 1975, during the effective term of the policy, Insured was involved in a one-car accident in Chicago. At the time of the accident, the car was occupied by Insured, Margaret Adduci, Janet Clancy, and Peggy Sabados.

On May 19, 1975, suit was filed in the circuit court of Cook County against Insured by the Adducis. The *ad damnum* of the complaint significantly exceeded the liability limits of Insured's policy with Insurer. The complaint alleged that Insured lost control of the vehicle, which was alleged to have been in proper working condition at the time. On May 29, 1975, Insured was served with notices of attorneys' liens on behalf of all the passengers of the vehicle and their spouses.

The action against Insured then proceeded through early discovery phases. On November 3, 1975, Insurer's defense counsel (apparently employed by Insurer to defend Insured) was supplied with a copy of an October 13, 1975, medical report from Margaret Adduci's physician. Four days later, all parties received the physician's complete records on the patient.

Interrogatories from Insured were served on the Adducis. The answers returned on November 4, 1975, described the nature of Margaret Adduci's injuries, the sources of medical treatment, and the elements of damages sought.

In mid-1975 and in February 1976, counsel for the Adducis demanded that Insurer pay the full policy limits into the court in settlement of all claims. Insurer responded by requesting a discount. On April 2, 1976, Margaret Adduci was deposed. At the deposition, Insurer's counsel allegedly acknowledged that Margaret Adduci's damages alone exceeded Insured's policy limits. At that time, counsel possessed complete hospital records for Margaret Adduci, as well as copies of medical bills and proof of her income loss.

On April 7, 1976, the attorney representing all claimants wrote to Insurer's attorneys, demanding payment of the full policy limits of Insured's policy in return for covenants not to sue Insured, to be executed by each passenger of Insured's car. The demand set a 28-day deadline and noted that it would be withdrawn if the amount was not submitted by the end of that period, unless a written extension based upon "any reasonable grounds" had been requested during the period. A second letter clarifying the demand was sent on April 15, 1976. No responsive communication was received by claimants' attorney within the 28-day period. Subsequent preparation of the case for trial "foreclosed the opportunity for settlement," according to an allegation of the instant complaint. Included in

these subsequent preparations was the filing of an amended complaint which added Clancy and Sabados as plaintiffs.

Insurer's counsel indicated by letter on June 7, 1976, that a response to the April 7 demand would be forthcoming at the pretrial conference set for June 18, 1976. At that later date, 72 days after the claimants demanded settlement, Insurer's attorney offered to pay Insured's full policy limits ($25,000) in settlement. The claimants refused the offer.

Prior to trial, the claims of Clancy and Sabados were settled, leaving $17,500 of insurance coverage remaining. The Adducis' claims went to trial. A jury returned a verdict in their favor for $70,000. On July 31, 1979, Insurer paid the remainder of the policy limits into court, leaving an unpaid balance of $52,500. Citation proceedings against Insured showed her to have insufficient assets to pay the judgment. The Adducis then accepted an assignment from Insured which allowed the Adducis to bring the present action against Insurer.

Count I of their complaint alleged that Insurer had failed to discharge its obligations to Insured reasonably and in good faith. Count II alleged that Insurer had breached the duty to treat Insured's interests as paramount to its own. Insurer moved to dismiss both counts, asserting (1) that the complaint failed to state a cause of action, and (2) that the Adducis had no cause of action against Insurer in any event because in taking Insured's assignment, the Adducis discharged Insured's liability to the Adducis under the judgment and thereby allegedly also discharged any liability of Insurer to Insured arising from the first trial. The trial court granted Insurer's motion on the first ground alleged.

I

The Adducis assert that the allegations contained in their amended complaint are sufficient to state a cause of action against Insurer based upon its alleged "bad faith" failure to settle the suit against Insured within her policy limits. (Count I.)

■■■ Illinois law recognizes a duty on the part of an insurer to give its insured's interests at least equal consideration with its own where the insured is a defendant in a suit in which the recovery may exceed her policy limits. Where the insurer fails to settle a case within policy limits through fraud, negligence, or bad faith, this duty is breached. If a judgment in excess of the insured's policy limits is a result of such breach, the insurer may then be held liable for the full amount of the judgment irrespective of the insured's policy limits. (See *Scroggins v. Allstate Insurance Co.* (1979), 74 Ill. App. 3d 1027, 1030, 393 N.E.2d 718; *Cernocky v. Indemnity Insurance Co.* (1966), 69 Ill. App. 2d 196, 204, 216 N.E.2d 198, *appeal denied* (1966), 34 Ill. 2d 629; *Olympia Fields Country*

*Club v. Bankers Indemnity Insurance Co.* (1945), 325 Ill. App. 649, 673, 60 N.E.2d 896.) The mere fact of entry of the excess judgment against the insured constitutes damage and harm sufficient to permit recovery. *Smiley v. Manchester Insurance & Indemnity Co.* (1973), 13 Ill. App. 3d 809, 813-14, 301 N.E.2d 19.

■■ Therefore, in order to have stated a cause of action, the Adducis must have alleged sufficient well-pleaded facts indicating that such duty arose here, that Insured breached this duty through either fraud, negligence, or bad faith, and that such breach was the legal cause of harm to Insured. The Adducis must also have alleged the specifics of that harm.

In filing the motion to dismiss the Adducis' complaint, Insurer admitted as true all well-pleaded facts and allegations and granted every intendment of fair inference in favor of the pleading. The motion should have been denied if, under any aspect of the facts stated, the Adducis might recover on the theory set forth therein. *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 947, 338 N.E.2d 912.

Examination of the allegations contained in count I demonstrates that the Adducis have sufficiently alleged the existence of Insurer's duty to treat Insured's interests at least equally with its own. The allegations state that Insurer's counsel was aware of the almost certain liability of Insured for injuries suffered by Margaret Adduci and the other passengers. At a deposition, Insurer's counsel admitted that the extent of Adduci's injuries alone likely exceeded the policy limits. In such circumstances, Illinois law raises a duty on the part of Insurer to treat Insured's interests at least equally with its own. Therefore, the Adducis' complaint meets the initial step in pleading a valid cause of action on this theory.

### A.

The second step for pleading a valid cause of action is the presence of allegations which sufficiently show breach of that duty on the part of Insurer. In dismissing the complaint, the trial court found the Adducis' allegations lacking this element. Thus, these allegations constitute the crux of this appeal.

The central theory relied upon by the Adducis is that an insurer has breached its duty to the insured when it fails to respond to settlement overtures made by the party which is proceeding against the insured. We agree that as a general principle of law, facts demonstrating such a failure on the part of an insurer can serve to meet the requirements of the "breach" element of this cause of action, *if they are sufficiently pleaded and proved.* The Adducis' complaint contains the following allegation on this matter:

"[Insurer] ignored and failed to respond to plaintiff's oral settlement demands and plaintiff's April 7, 1979 [*sic*][1] written offer of a settlement until long after said written offer, by its express terms, was withdrawn, and failed to ask for any extension of the life of said written settlement offer although they were invited to do so if there were reasonable grounds for an extension."

Yet, the complaint also alleges that:

"On June 18, 1976, defendant's [Insurer's] counsel offered the full $25,000 policy limits to all claimants * * * and plaintiffs refused defendant's offer."

The sole reason alleged in the complaint for the claimants' refusal to accept Insurer's tender of the offer some 72 days after the demand was made and some 40 days after it "expired" was that "further preparation of the claims for trial was conducted, thereby necessitating a different attorney fee arrangement between plaintiffs' counsel and all three plaintiffs, which foreclosed the opportunity for settlement." No facts to amplify this bald allegation could be adduced by this court at oral argument.

■■ We are of the opinion that these allegations are insufficient as a matter of law to demonstrate that the activities of Insurer constituted a breach of its duty to Insured. As stated, we recognize in some circumstances an insurer's failure to respond to a settlement demand, where trial could result in a judgment exceeding policy limits, could constitute a breach. Here, the allegations show that Insurer *did* respond to the claimants' demand. While this response was forthcoming after the passage of the claimants' self-imposed deadline, it followed only 40 days thereafter, and came only 13 months after the occurrence of the accident giving rise to the claimants' suit. No facts sufficiently indicate why the claimants found it impossible to accept the offer at this time, so as to fairly place the blame for failure of settlement upon Insurer. The allegations of the complaint simply do not show why the offer would have been good on May 7, 1976, but was not acceptable on June 18, 1976. In such circumstances, we cannot say that the recited facts adequately allege a breach of duty on the part of Insurer. Therefore, we conclude that the trial court did not err in so ruling.

### B.

The Adducis also allege in the amended complaint and assert here that the conduct of Insurer breached its duty to Insured in three other ways.

---

[1] Should read April 7, 1976.

■■■ First, the Adducis contend that Insurer breached its duty by failing to initiate settlement negotiations. It is settled in Illinois that insurance companies are not required to initiate negotiations to settle a case. (*Haas v. Mid-America Fire & Marine Insurance Co.* (1976), 35 Ill. App. 3d 993, 996, 343 N.E.2d 36; *Powell v. Prudence Mutual Casualty Co.* (1967), 88 Ill. App. 2d 343, 347, 232 N.E.2d 155, *appeal denied* (1968), 37 Ill. 2d 627.) The basis for this rule is that the imposition of such a requirement would put the insurer into a negotiating disadvantage which is imposed on no other litigant. (*Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, 253, 194 N.E.2d 489.) While an exception is recognized where the probability of an adverse finding on liability is considerable and the amount of probable damages would greatly exceed the insured's coverage (*Kavanaugh v. Interstate Fire & Casualty Co.* (1975), 35 Ill. App. 3d 350, 356, 342 N.E.2d 116), we believe that this exception should be sparingly used, and then only in the most glaring cases of an insured's liability, since "[t]rial attorneys are not endowed with the gift of prophecy so as to be able to predict the precise outcome of personal injury litigation." (*Kavanaugh*, at 357.) No facts are alleged here to demonstrate the probable liability of Insured for high-figure damages to each of the passengers in her auto. Thus, as a matter of law, Insurer cannot be said to have breached its duty by failing to initiate settlement negotiations in this case. The trial court correctly so ruled.

Secondly, the Adducis allege that Insurer breached its duty by failing to admit its liability in the case against Insured. The Adducis cite no authority supporting their position that the failure to so act constituted a breach. While in some set of circumstances, such an admission of liability might be necessary in order for the insurer to properly protect both the interest of itself and the insured, the present facts are not such a case. The trial court correctly held that this allegation failed to allege breach of Insurer's duty.

Finally, the Adducis contend that Insured's "promise" to pay the policy limits into the court was not kept and thus constitutes breach of Insurer's duty. Review of the transcript from the hearing held on June 18, 1976, illustrates no such promise. Additionally, had such a promise been made, no consideration in support thereof is apparent. Lastly, at that point in time, the Adducis' attorney indicated that they would reject Insurer's offer to settle within policy limits as untimely made. Thus, this allegation is of no legal significance. The trial court committed no error in dismissing this facet of the complaint.

In summary, count I of the Adducis' complaint fails to adequately allege facts demonstrating a breach of the recognized duty of Insurer to Insured. Therefore, the trial court correctly dismissed count I of the complaint with prejudice.

## II

The Adducis contend that this court should recognize a new, more stringent duty on the part of insurers toward their insured: the duty to treat the insured's interests as *paramount* to their own. (Count II.)

After reviewing the authority cited by the Adducis and examining scholarly writing on the topic, we are of the opinion that maintaining the present status of Illinois law is the more acceptable direction for this court to pursue. First, the Adducis' argument is essentially hortatory. Research discloses that adoption of such a rule would put Illinois in the extreme minority viewpoint. (See, *e.g.*, 7C Appelman, Insurance Law & Practice §4711, at 396-97 (1979).) Additionally, while the Adducis' theory may have some intrinsic paternalistic logic to it, the theory also overlooks the realities in which insurer-insured business relationships operate. This court posits that not many insurance companies would find it economically advantageous to enter into liability protection services at reasonable costs to the insured if the insurer were required, in every instance, to initially overlook its own fiscal concerns while focusing solely upon the interests of its customers. Such a situation simply lacks sound business sense. The present Illinois standard, on the other hand, restrains the insurer from proceeding wholly in its self-interest, while allowing the insurer to continue to function as a profit-seeking operation. Protection is provided to both parties at present, while protection may in the end blanket neither party under the system proposed by the Adducis.

■■ In sum, our research fails to demonstrate a firm basis in the law for adoption of the "paramount" test suggested by count II of the complaint. Illinois law as presently constructed is in line with the majority view and appears to adequately consider the relative positions of both parties. Therefore, the trial court did not err in dismissing count II of the complaint for failure to state a cause of action.

For the reasons stated above, we affirm the decision of the circuit court of Cook County.

Affirmed.

HARTMAN, P. J., and STAMOS, J., concur.