JOAN PHELAN, a Minor, by her Father and Next Friend, Hugh Phelan, Plaintiff-Appellant, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division) No. 81—2474

Opinion filed April 11, 1983.

Jerome Mirza & Associates, of Bloomington, and William J. Harte, Ltd., of Chicago, for appellant.

John F. Skeffington, Glen E. Amundsen, and Victor J. Piekarski, all of Querrey, Harrow, Gulanick & Kennedy, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Joan Phelan, the assignee of defendant State Farm Mutual Automobile Insurance Company's insured, brought this action to recover an amount in excess of the limits of the insurance policy of defendant's insured. Plaintiff appeals from an order of the circuit court of Cook County which entered judgment *n.o.v.* in favor of defendant and granted alternative relief of a new trial. Plaintiff contends that: (1) the trial court erred in entering judgment *n.o.v.* in favor of defendant; and (2) the trial court erred in granting the alternate relief of a new trial.

Plaintiff, Joan Phelan, was injured on December 26, 1971, when the automobile in which she was a passenger was struck by an automobile operated by Paul Santelli. The collision occurred in Grundy County. As a result of the collision, plaintiff, an 11-year-old, was rendered a quadriplegic. Santelli was insured by defendant State Farm Mutual Automobile Insurance Co. The insurance policy required State Farm to defend any lawsuits arising out of the operation of an auto-

mobile. The policy limits of liability were $100,000 per person and $200,000 per occurrence.

Plaintiff's father retained Roger B. Gomien, an attorney from Morris, Illinois, to handle plaintiff's claim against Santelli. On January 10, 1972, Jerry Pitstick, a field claim representative for defendant, investigated the collision. Pitstick's report of January 26, 1972, indicated that Santelli had "little regard for the safety of his passengers and little regard for traffic proceeding in a southerly direction" when Santelli backed up his automobile on a highway at the base of a hill. The report indicated that the negligence of Santelli would stem from his violation of two sections of the Illinois Vehicle Code.

On April 13, 1972, plaintiff instituted an action against Santelli. Defendant retained the law firm of Black and Black of Morris, Illinois, to defend Santelli. During the course of discovery, Gomien determined that the limits of liability for the insurance policy which covered Santelli was $100,000 per person and $200,000 per occurrence. On July 27, 1972, Gomien made a verbal settlement demand of $100,000 to August Black, who conveyed plaintiff's settlement demand to defendant. According to Gomien, he informed Black that plaintiff was a quadriplegic and that she required constant care. On September 26, 1972, Gomien wrote to Black and again demanded $100,000 to settle the lawsuit against Santelli. The letter indicated that the $100,000 demand would be in force until November 1, 1972, after which date "we will proceed to move the matter to trial as rapidly as possible, and after which date we will no longer be in a position to accept the $100,000 in full settlement" of plaintiff's claim. Gomien enclosed with this demand letter a report from one of plaintiff's physicians which indicated that plaintiff was a "vegetable" and that her prognosis was "absolutely hopeless." On September 27, 1972, Gomien spoke with Black and there was a discussion about plaintiff giving a covenant not to sue which would allow plaintiff to proceed against the driver of the automobile in which she was a passenger.

During discussions with Temple Burger, a claims superintendent for defendant, Black recommended that defendant make the best possible settlement up to the policy limits of $100,000. In the opinion of Burger, a jury would find Santelli negligent. In mid-October 1972, defendant's claim committee reviewed its file in order to make a final settlement recommendation. The committee gave Burger authority to authorize $100,000 for settlement. On October 24, 1972, Burger informed Black of the final authorization to offer up to $100,000. Burger requested that Black offer $85,000 to Gomien, although Burger knew that the demand was $100,000. On October 26, Black re-

quested a medical report from a neurosurgeon who examined plaintiff. The following day, Gomien told Black that he was stalling and that after November 1, "we will proceed to trial." The neurosurgeon's report was forwarded to Black by Gomien. On October 30, plaintiff was examined in her home by Dr. Seng. Seng concluded that plaintiff had a severe brain injury with quadriplegic paralysis and that her prognosis for recovery was practically nonexistent.

On October 31, Black offered to settle the case for $85,000. Gomien declined the offer, but agreed to talk with plaintiff's parents. After discussing defendant's offer with plaintiff's parents, Gomien told Black that he would accept $97,500 for a covenant not to sue or $100,000 for a release. Gomien informed Black that if the case was settled on November 1 for $100,000, he would reduce his fee from 33⅓% to 20% and that if the case were settled for $97,500, he would reduce his fee by an additional $2,500. On November 1, Black informed Gomien that the $85,000 offer still stood. Gomien then told Black that plaintiff's demand would remain in force until November 6, after which time it would be necessary to hire a trial specialist. On November 6, Black confirmed the $85,000 offer of settlement in a letter to Gomien. Gomien subsequently informed Black in a letter dated November 6 that the $85,000 offer was rejected. Gomien subsequently referred plaintiff's case to a Jerome Mirza.

On November 29, 1972, Bruce Buckley, who replaced Burger as the field claim superintendent, met with Gomien. Gomien did not discuss the case because the case had been referred to Mirza. Gomien indicated to Buckley that he thought State Farm had improperly conducted negotiations and that there was the possibility of an excess liability claim against defendant. In a December 1 memorandum, Buckley indicated that there was a concern with "excess judgment." Buckley contacted Black and informed Black that there could be an excess judgment claim against defendant and that Black should offer Mirza $97,500 for a covenant not to sue or, if rejected, the policy limits of $100,000. On December 4, Black spoke with Mirza and offered $97,500 for a covenant not to sue. Mirza rejected the offer in a letter dated December 5. Following a deposition on December 18, Black offered Mirza and Gomien $100,000 to settle the case. The offer was refused.

In January 1973, plaintiff's motion for a change of venue was granted and in May 1973, the case was set to be tried in mid-September 1973. Prior to the commencement of the trial on September 12, 1973, Black's offer of $100,000 to settle the case was refused by Mirza. At trial, the jury returned a verdict against plaintiff and in fa-

vor of Santelli. The appellate court reversed and ordered a trial on the sole issue of plaintiff's damages. (*Phelan v. Santelli* (1975), 30 Ill. App. 3d 657, 334 N.E.2d 391.) Following the denial of Santelli's petition for leave to appeal to the Illinois Supreme Court and the issuance of the mandate by the appellate court on January 19, 1976, Black sent defendant's check in the amount of $100,000 to Mirza. Mirza did not accept the check. On June 7, 1976, prior to the beginning of the trial on damages, Black tendered to Mirza defendant's check for $100,000, which Mirza declined to accept. On June 10, the jury returned a verdict finding for plaintiff and assessing damages in the amount of $350,000. On June 30, 1976, defendant paid $100,000 to plaintiff in partial satisfaction of the judgment against Santelli.

In August 1976, Mirza requested that Santelli execute an assignment of his bad-faith claim for excess liability against defendant. Santelli did not respond to Mirza's request. On November 15, Santelli appeared in a citation-to-discover-assets proceeding and, at that time, he was ordered by the court to execute an assignment of his claim against defendant to plaintiff. On December 6, 1976, plaintiff, as assignee of defendant's claim, brought this action against defendant in the circuit court of Cook County. In April 1981, the jury returned a verdict for plaintiff in the amount of $250,000 plus 6% interest and on April 6, the court entered the judgment order.

On June 10, defendant filed its post-trial motion in which it sought the entry of a judgment *n.o.v.* In the alternative, defendant sought a new trial because of 29 alleged trial errors. On August 13, 1981, the trial court granted defendant's motion. The court set aside the jury verdict and entered judgment *n.o.v.* in favor of defendant. The court also conditionally granted the alternate relief sought by defendant. Plaintiff appeals.

Prior to determining whether the court properly granted defendant's motion for judgment *n.o.v.*, we shall first consider whether plaintiff had standing to maintain this action. In support of her contention that she has standing, plaintiff cites *Brown v. State Farm Mutual Automobile Insurance Association* (1971), 1 Ill. App. 3d 47, 272 N.E.2d 261. Plaintiff argues that *Brown* permits the assignment of a bad-faith claim against an insurer in a citation-to-discover-assets proceeding brought against the insured. Defendant argues that *Roundtree v. Barringer* (1981), 92 Ill. App. 3d 903, 416 N.E.2d 675, precludes the involuntary assignment of a bad-faith claim.

In *Brown*, plaintiff recovered a $40,000 judgment against the administrator of the estate of defendant's insured. Defendant had issued an automobile liability policy to the insured in the amount of $20,000.

After discovery, plaintiff offered to settle the case for the $20,000 policy limits. Defendant refused the offer and no counteroffer was made. A citation-to-discover-assets proceeding was commenced against the estate of the insured. The court found that the assets of the estate were $5,500 and a potential chose in action against defendant for its bad faith in settling the claim within the insured's policy limits. The administrator of the insured's estate assigned the bad-faith claim to plaintiff, reserving the right to obtain for the insured's heirs any amount received over $14,500, attorney fees and costs. In *Brown*, the trial court dismissed the action upon the basis that plaintiff did not acquire any legal right to maintain the insured's bad-faith claim. The Fourth District of this court considered the various cases from other jurisdictions in which assignability was and was not permitted. The court in *Brown* concluded that there was "no valid reason in public policy why the cause of action should not be assignable" and reversed the trial court's dismissal of the action.

In *Roundtree*, plaintiff obtained a $75,000 judgment against defendant. Defendant was the administrator of the estate of the insured who was covered under an automobile insurance policy with limits of $50,000. Plaintiff then brought a citation-to-discover-assets proceeding against the administrator of the insured's estate. At the citation proceedings, plaintiff alleged that the bad-faith claim arose out of the insurer's negligence, bad faith or fraud in the insurer's refusal to settle plaintiff's claim. The court refused to order the assignment of the bad-faith cause of action. The Fifth District of this court upheld the trial court's order which denied plaintiff's motion to compel the assignment of the cause of action. The court in *Roundtree* concluded that to compel the assignment of a cause of action in circumstances raised in the case would violate public policy. *Roundtree* cautioned that to permit involuntary assignments, a plaintiff could go on a "fishing expedition" which may lead to champerty and specious litigation. The court also indicated that there would be no reason that a plaintiff could not compel a judgment debtor to assign other choses in action, such as a medical or legal malpractice claim.

We have carefully examined the decisions in *Brown* and *Roundtree* and conclude that *Brown* should be followed in the instant case. A citation-to-discover-assets proceeding is governed by section 2—1402 of the new Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1402, formerly Ill. Rev. Stat. 1979, ch. 110, par. 73.) Pursuant to section 2—1402(b)(1) (formerly section 73(2)(a)) the court may "compel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part *** choses in action ***."

Section 2—1402(b)(5) (formerly section 73(2)(e)) permits the court to "compel any person cited to execute an assignment of any chose in action ***." By the language employed by the General Assembly, section 2—1402(b) (formerly section 73(2)) does not contain any limitations on the nature of the choses in action for which assignment may be compelled. In support of its decision, the court in *Roundtree* relies upon two cases from other jurisdictions. Both of these cases involved garnishment actions and, thus, are distinguishable from the instant appeal. We are not persuaded by defendant's arguments that the intent of section 2—1402 (formerly section 73) precludes a court, in a citation-to-discover-assets proceeding, from compelling the assignment of a bad-faith cause of action under facts similar to the instant case.

■ *Roundtree* also expresses concern that an injured plaintiff and an insured may engage in collusive conduct or champerty against an insurer. Such collusive conduct could be raised as a defense to an assigned bad-faith claim against an insurance company. We do not consider the mere possibility of collusive conduct to be a valid basis on which to deny a right of action. As a practical matter, an injured plaintiff is in a better position to determine whether an action for bad faith may lie against a defendant's insurer since it is the plaintiff who conducts settlement negotiations with defendant's insurer. We do not find a sound basis to preclude a court, in a citation-to-discover-assets proceeding, from ordering the cited judgment-debtor to assign to the judgment-creditor a bad-faith cause of action against the judgment debtor's insurer under facts similar to the case at bar. Accordingly, we reject the conclusion reached in *Roundtree* that such assignments are contrary to public policy and hold that plaintiff has standing to maintain this action as the assignee of Santelli's bad-faith claim against defendant.

Plaintiff next argues that the trial court erred in entering the judgment *n.o.v.* because the evidence demonstrates that defendant was guilty of negligence or bad faith in its settlement negotiations on behalf of Santelli. Plaintiff urges that Illinois law establishes that if an insurance company engaged in negligent, fraudulent or bad-faith conduct in negotiating a settlement on behalf of the insured, the insurance company may be held liable for the entire judgment where the judgment exceeds the limits of liability of the insurance policy. (*Scroggins v. Allstate Insurance Co.* (1979), 74 Ill. App. 3d 1027, 393 N.E.2d 718; *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.* (1945), 325 Ill. App. 649, 60 N.E.2d 896.) Plaintiff maintains that the evidence establishes that defendant breached its duty to Santelli because in plaintiff's action against Santelli, it appeared that

there was a strong probability that there would be an adverse finding against Santelli and that the damages would exceed the policy limits. See *Kavanaugh v. Interstate Fire & Casualty Co.* (1975), 35 Ill. App. 3d 350, 342 N.E.2d 116.

Defendant maintains that the trial court properly granted the judgment *n.o.v.* because the evidence failed to establish that defendant breached its duty to Santelli. Defendant argues that the evidence, as a matter of law, establishes that plaintiff's claim was not settled because of the unreasonable refusal of plaintiff's attorney to settle the case less than one month after plaintiff's self-imposed time deadline had passed. Defendant maintains that the facts presented herein are much stronger than the facts presented in *Adduci v. Vigilant Insurance Co.* (1981), 98 Ill. App. 3d 472, 424 N.E.2d 645, where plaintiff's counsel set a 28-day deadline for acceptance of plaintiff's demand for the policy limits. The insurer did not respond to plaintiff's settlement demands within the time period. At the pretrial conference 72 days after the deadline had passed, the insurance company's offer of the policy limits was refused. The appellate court affirmed the dismissal of plaintiff's amended complaint against the insurer because the amended complaint was insufficient, as a matter of law, to demonstrate that the insurer breached its duty to its insured by the insurer's failure to respond to plaintiff's settlement demand within the time deadline. Defendant herein argues that *Adduci* is controlling in the instant action. Defendant also maintains that the reasons Gomien stated as to why he refused defendant's offer in December 1972 are specious and that the evidence did not establish any valid reason why the offer could not have been accepted after the deadline.

Defendant also points out that it offered to plaintiff 85% of the policy limits and that this is similar to the facts in *Kavanaugh v. Interstate Fire & Casualty Co.* (1975), 35 Ill. App. 3d 350, 342 N.E.2d 116, where the insurer offered $7,500 of a $10,000 policy after plaintiff demanded the policy limits prior to trial. After an adverse finding on liability, the insurance company tendered the policy limits. Defendant maintains that in *Kavanaugh,* the court held that the insurer had not been guilty of bad faith as a matter of law.

A judgment *n.o.v.* may be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Defendant argues that based upon the evidence in this case and the decision in *Adduci v. Vigilant Insurance Co.* (1981), 98 Ill. App. 3d

472, 424 N.E.2d 645, the decision of the trial court was proper. We view *Adduci* to be distinguishable from the instant case. In *Adduci*, the trial court dismissed plaintiff's amended complaint for failure to state a cause of action. The amended complaint in *Adduci* alleged that defendant-insurer was guilty of bad faith because the insurer failed to respond to plaintiff's settlement overtures. Seventy-two days after plaintiff's demand and 40 days after the offer expired, defendant-insurer tendered to plaintiff the policy limits. Plaintiff refused because additional preparation for trial had been made, thereby foreclosing the opportunity for settlement. The court in *Adduci* stated that there were no facts to support plaintiff's assertion in the amended complaint. In *Adduci*, the court noted that no facts sufficiently indicated why the offer of settlement could not be accepted, so as to fairly place the blame for the failure to settle on the insurer.

Contrary to defendant's assertion, we do not view *Adduci* to stand for the proposition that as a matter of law, a settlement offer 40 days after the expiration of plaintiff's demand is insufficient to establish the bad faith of the insurer; rather, *Adduci* involved pleadings which allege insufficient facts to sustain a cause of action and, therefore, even if the allegations in the complaint were proved, plaintiff would not be able to recover. This is clearly different than the instant case in which the issue of defendant's bad faith was submitted to the jury. In this case, the jury concluded defendant was guilty of a breach of duty in its failure to settle with plaintiff. The evidence which plaintiff adduced at trial concerned the necessity of plaintiff's attorney procuring the services of a trial attorney, added expenses incurred in preparation for trial and the welfare of plaintiff's family. In addition, there was evidence that on October 24, 1972, defendant's claim committee authorized a settlement of the case for the policy limits of $100,000, but that defendant did not offer plaintiff that amount until December 1972. This evidence did not so overwhelmingly favor defendant that no contrary verdict could be reached.

■■■ Finally, in order for plaintiff to recover against defendant on a bad-faith claim, it must be shown that defendant breached its duty of good faith to the insured. (*Scroggins v. Allstate Insurance Co.* (1979), 74 Ill. App. 3d 1027, 393 N.E.2d 718.) Where it appears that the probability of an adverse finding on liability is great and the amount of damages would exceed the policy limits, the insurer has a duty to settle within the policy limits or face an excess liability claim for a breach of the duty owed to the insured. (*Kavanaugh v. Interstate Fire & Casualty Co.* (1975), 35 Ill. App. 3d 350, 342 N.E.2d 116.) From the evidence presented at trial, it appears that both of

these prerequisites to a finding of liability were met. First, Temple Burger, a claims superintendent for defendant, was of the opinion that a jury would find Santelli negligent and, second, it appears that defendant was aware that damages would be in excess of the policy limits since defendant was aware that plaintiff was a quadriplegic and that there was little or no chance for recovery. Based upon this and other evidence, it does not appear that the evidence so overwhelmingly favored defendant that no contrary verdict could be reached. We conclude, therefore, that it was error for the trial court to enter judgment *n.o.v.* for the reasons which we have discussed.

■ Plaintiff also argues that the trial court erred in granting the alternate relief of a new trial sought by defendant. In its motion for a judgment *n.o.v.* and, in the alternative, motion for a new trial, defendant claimed 29 trial errors. Notwithstanding our decision that the trial court erred in granting defendant's motion for a judgment *n.o.v.*, we conclude that the trial court properly granted defendant's motion for a new trial on the grounds that the court erred in excluding relevant testimony of defendant's insured Paul Santelli.

■ Plaintiff made a motion *in limine* to exclude evidence which indicated that the verdict in the first trial was in favor of Santelli and evidence that Santelli was pleased with or had no complaint against the manner in which defendant handled plaintiff's claim. The trial court granted the motion *in limine* and Santelli was precluded from testifying as to the subjects raised in plaintiff's motion *in limine*. As to Santelli being precluded from testifying as to the jury verdict in the first trial, the appellate court in *Phelan v. Santelli* (1975), 30 Ill. App. 3d 657, 334 N.E.2d 391, concluded that the jury verdict in the first trial was contrary to the manifest weight of the evidence and the law. This testimony was not probative of the issue of defendant's bad faith and, therefore, this testimony was properly excluded by the trial court.

The second testimony which was excluded concerned evidence which indicated that Santelli was pleased with or had no complaint against defendant's handling of plaintiff's claim against him. Since the duty of an insurer is owed to the insured (*Yelm v. Country Mutual Insurance Co.* (1970), 123 Ill. App. 2d 401, 259 N.E.2d 83), the testimony of the insured is relevant as to whether the insurer breached that duty. Thus, the trial court initially erred in excluding this testimony, but remedied any error by granting the alternate relief of a new trial sought by defendant. Thus, we hold that the trial court did not abuse its discretion in granting a new trial. See *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.

█ Finally, one other issue of note is raised by the parties. At trial, defendant requested that the court give the jury a non-IPI instruction which defined bad faith. The court refused defendant's request. Defendant maintains that the court's decision to grant defendant a new trial may also be justified on the grounds that it was error to refuse defendant's request for an instruction on bad faith. The court instructed the jury that it was the duty of defendant "to exercise good faith and to use ordinary care toward the interests of the insured." Another instruction stated plaintiff had to prove that "the bad faith or negligence of defendant was the proximate cause of the judgment against Paul Santelli." We are not persuaded by defendant's contention that such a bad-faith instruction was required to properly instruct the jury. The instructions given properly instructed the jury and defendant has not demonstrated that the court's refusal to give the jury an instruction on bad faith resulted in an unfair trial. (See *Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223, 419 N.E.2d 1253.) Accordingly, we reject defendant's contention that a bad-faith instruction was necessary and hold that the trial court did not abuse its discretion in refusing to give to the jury a non-IPI instruction on bad faith. See *Fornoff v. Parke Davis & Co.* (1982), 105 Ill. App. 3d 681, 434 N.E.2d 793.

Accordingly, the entry of judgment *n.o.v.* by the circuit court of Cook County is reversed and the order granting defendant the alternate relief of a new trial is affirmed. This cause is remanded to the circuit court of Cook County for a new trial.

Affirmed in part; reversed and remanded in part.

McGLOON and GOLDBERG, JJ., concur.