**Agnes BERGEN, Administratrix of the Estate of Thomas Karl Kauppinen, et al., Plaintiffs,**

v.

**F/V ST. PATRICK, et al., Defendants.**

**No. A82–170 Civil.**

United States District Court,
D. Alaska.

April 21, 1988.

See also 816 F.2d 1345.

James D. Rhodes, Anchorage, Alaska, Gerald Markham, Kodiak, Alaska, for plaintiffs.

Jeffrey M. Feldman, Anchorage, Alaska, for defendant Wilson.

Dale W. House, Anchorage, Alaska, for defendants Home Ins. Co., Lane, Powell & Barker, and Lane, Powell, Moss & Miller.

## MEMORANDUM AND ORDER

von der HEYDT, District Judge.

THIS CAUSE comes before the court on appeal from Magistrate Roberts' Orders filed October 30, 1987, and July 22, 1987, and on plaintiffs' second motion for order directing assignment, filed December 21, 1987. The court agrees with plaintiffs' substantive position but adopts defendant Wilson's view as to procedure. The court will affirm the Magistrate's orders on grounds different from those advanced by the Magistrate and will deny the pending motion.

Plaintiffs hold a largely unsatisfied $7.4 million judgment against defendant Wilson for the deaths and injuries resulting from the 1981 incident aboard the F/V ST. PATRICK. Wilson was insured by the Home Indemnity Co. Plaintiffs seek to be assigned Wilson's potential cause of action against Home for alleged bad faith failure to settle.[1] The Magistrate denied their motion to compel assignment. More recently, plaintiffs have also sought to compel the assignment of Wilson's potential malpractice claim against the attorneys supplied by Home.

■ The substantive question before the court is whether, under Alaska law, such causes of action are subject to involuntary transfer in post-judgment proceedings.[2] See F.R.Civ.P. 69(a). The Magistrate held that they are not. In so doing, the Magistrate seems properly to have focused on A.S. 09.35.070, enumerating the property subject to execution. That statute encompasses "[a]ll goods, chattels, money, or other property, both real and personal ... of the judgment debtor not exempt by law." The central question is whether the potential causes of action at issue are "other property" within the ambit of the statute.

Unfortunately, the parties did not bring to the Magistrate's attention A.S. 01.10.-060, which defines "personal property" for purposes of the laws of this state and expressly includes within the definition "things in action." A "thing in action" is a chose in action, *Black's Law Dictionary* 1326 (5th ed. 1979), and that, of course, is exactly what defendant Wilson possesses. *Id.* at 219.[3]

Wilson argues that the court should carve out a special exception, on policy grounds, for bad faith causes of action against an insurer. The centerpiece of his argument is the line of cases represented by *Pringle v. Robertson,* 258 Or. 389, 465 P.2d 223 (1970). These cases hold that a

---

1. Wilson intends to file suit against Home shortly. The court has the word of Wilson's counsel, as an officer of the court, that a complaint will be filed before the statute of limitations arguably expires on May 7.

2. Plaintiffs Bergen, et al. have withdrawn their request that this question be certified to the Alaska Supreme Court. Defendant Wilson favors certification only if the court is inclined to rule against him. Such a conditional request for certification is difficult to take seriously. In

any event, certification is not appropriate (1) because the issues discussed below are not sufficiently doubtful to justify involving the Alaska Supreme Court and (2) because certification could introduce procedural complications into the case.

3. After discussing A.S. 09.35.070, the Magistrate turned to the law relating to direct actions against insurers, an issue largely irrelevant to the question before the court.

judgment creditor cannot obtain a defendant's cause of action against his insurer by means of garnishment proceedings against the insurer. In general, these cases were decided against a statutory framework that did not expressly subject choses in action to collection proceedings. Moreover, all of the garnishment cases are factually distinguishable from the case at bar. It is natural that courts would reject garnishment, for the insurance company in fact holds no property—not even a chose in action—of the judgment debtor. It holds only an exposure. *See, e.g., Paul v. Kirkendall,* 6 Utah 2d 256, 311 P.2d 376 (1957); *Powell v. Prudence Mut. Cas. Co.,* 88 Ill.App.2d 343, 232 N.E.2d 155 (1967). Finally, these cases reflect a concern that the judgment creditor is "trying to enforce a chose in-action for [the judgment debtor], which [the debtor] does not believe exists or is unwilling to enforce." *Murray v. Mossman,* 56 Wash.2d 909, 355 P.2d 985, 988 (1960). Even if this concern is a valid reason for the courts' holdings, it does not apply here. Wilson does believe he has a cause of action and he does intend to enforce it.

A cause of action for bad faith failure to settle is voluntarily assignable in Alaska. *Andersen v. Edwards,* 625 P.2d 282, 290 (Alaska 1981) ("a cause of action can be assigned if it survives"; A.S. 09.55.570 provides for survival of all tort causes of action other than defamation). In states where such causes of action are assignable and where the question has arisen, it has almost universally been held that involuntary transfer to a judgment creditor is also possible. *Nicholson v. St. Anne Lanes, Inc.,* 158 Ill.App.3d 838, 111 Ill.Dec. 223, 512 N.E.2d 127, *appeal denied,* 117 Ill.2d 545, 115 Ill.Dec. 402, 517 N.E.2d 1088(1987); *Phelan v. State Farm Mut. Auto Ins. Co.,* 114 Ill.App.3d 96, 69 Ill.Dec. 861, 448 N.E.2d 579, 583 (1983); *Lange v. Fidelity & Cas. Co.,* 290 Minn. 61, 185 N.W.2d 881 (1971); *Rutter v. King,* 57 Mich.App. 152, 226 N.W.2d 79, 84 (1974); *cf. Woody's Olympia Lumber, Inc. v. Roney,* 9 Wash.App. 626, 513 P.2d 849 (1973). The sole dissenting voice comes

from a panel of the Illinois Court of Appeals, *Roundtree v. Barringer,* 92 Ill. App.3d 903, 48 Ill.Dec. 402, 416 N.E.2d 675 (1981), now discredited by the two subsequent decisions of that court cited previously. For reasons parallelling those discussed in the later Illinois cases, this court is confident that the Alaska Supreme Court would permit involuntary transfer under the facts of this case.

The court now turns to the appropriate procedure to effect the involuntary transfer. The "compelled assignment" requested by plaintiffs is not among the methods for collecting a judgment provided for by statute. It may be that this common-law remedy is unavailable in Alaska. *See Aleut Corp. v. Arctic Slope Regional Corp.,* 424 F.Supp. 397 (D.Alaska 1976). In any event, it is clear that a writ of execution is the presumptive method of collection in Alaska. F.R.Civ.P. 69(a); Alaska Civil Rule 69(a). Wilson prefers that his choses in action be disposed of by execution sale rather than by compelled assignment.[4] Such a procedure provides for immediate valuation of the choses in action and immediate retirement of a portion of his judgment debt. In theory, at least, this may be an important advantage for Wilson. Absent countervailing considerations, his preference is entitled to deference.

Plaintiffs have not explained how they would be prejudiced should the court order an execution sale rather than a compelled assignment. At the sale, plaintiffs can bid all or part of their judgment debt in offset. Any other bidders in the sale must bid cash (as a practical matter, Home is likely to be the only cash bidder on Wilson's bad faith chose in action). Plaintiffs should view any cash bid as an opportunity rather than as a threat; it could provide them with a substantial and certain recovery today in place of an uncertain recovery far in the future.

Plaintiffs Bergen, et al., argue that Home will have an advantage of superior knowledge to evaluate the bad faith claim, because Home has access to certain files

---

**4.** For a discussion of an execution sale of tort claims, *see e.g., Everts v. Will S. Fawcett Co.,* 24 Cal.App.2d 213, 74 P.2d 815 (1937); *cf. Woody's, supra.*

not yet available to plaintiffs. But plaintiffs and their attorneys have intimate, first-hand knowledge of this litigation and the associated settlement discussions. If they do not have enough information to make a reasonable evaluation of the bad faith claim, they have not explained what information they lack. In any event, the inherent uncertainty of bad faith recovery provides a practical guarantee that the bidding will not be forced to a level anywhere near the full value of the judgment. Even after bidding a portion of their judgment, therefore, plaintiffs will retain an unsatisfied judgment against Wilson well in excess of his apparent ability to pay or that of the co-defendants. Hence plaintiffs will have lost nothing but will have gained either the chose in action they seek or a cash payment from Home.

The court will therefore decline to order an assignment but will permit plaintiffs to seek a writ of execution from the Clerk. The court finds that such a writ should issue in some form; any objection to the writ shall be limited to matters of form and procedure. For reasons parallelling those discussed above, a writ may also issue with respect to Wilson's choses in action against Lane, Powell & Barker or Lane, Powell, Moss & Miller. At any execution sale, these choses in action shall be sold together with those against Home, in exchange for a single bid.

Finally, the court turns to plaintiffs' appeal of the Magistrate's discovery ruling of July 22, 1987. The documents sought are privileged within the context of this suit. Should plaintiffs gain control of Wilson's causes of action against Home or Lane Powell, the documents presumably will be discoverable in the context of a suit against those parties. Such discovery must await the outcome of the execution sale and must be sought through the appropriate court.

Accordingly, IT IS ORDERED:

(1) THAT Magistrate Roberts' orders of July 22, 1987 (Docket No. 419) and October 30, 1987 (Docket No. 429) are affirmed for the reasons set forth above;

(2) THAT plaintiffs' second motion for order directing assignment (Docket No. 449) is denied;

(3) THAT argument with respect to any request for writ of execution shall be limited as set forth above;

(4) THAT execution proceedings shall be conducted in conformity with the above memorandum;

(5) THAT the Clerk is directed not to refer any further proceedings in this case to the Magistrate unless expressly ordered to do so by a judge.