NO. 4-04-0697

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

 

WESTERN STATES INSURANCE COMPANY, )   Appeal from

Plaintiff-Appellant, )   Circuit Court of

v. )   Adams County

JESSICA O'HARA; RICHARD O'HARA; MARY    )   No. 03MR120

ANN )  

O'HARA; ROBERT HILGENBRINCK; MARY       )

HILGENBRINCK; ANDREW HILGENBRINCK by    )

His Father and Next Friend, ANTHONY     )

HILGENBRINCK; ANTHONY HILGENBRINCK;     )   Honorable

and LORI HILGENBRINCK, )   Mark A. Schuering,

Defendants-Appellees. )   Judge Presiding.  

_________________________________________________________________ 

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Western States Insurance Company (Western States), appeals the order of the circuit court of Adams County holding it in contempt for failing to comply with an order directing it to produce certain documents to defendants Jessica, Richard, and Mary Ann O'Hara (collectively O'Haras)--its insureds and Robert, Mary, Anthony, and Lori Hilgenbrinck (collectively Hilgenbrincks)--parties in another vehicle, some of whom claim injury.  Western States contends the court's orders are in error because (1) the documents are protected from discovery by the attorney-client privilege and the work-product doctrine and (2) the court erred by holding the privilege log inadequately described the documents withheld.  Western States further asks this court to vacate the contempt order.  We affirm and remand for further proceedings.

I. BACKGROUND

In June 2001, Western States issued an automobile liability policy (policy) to Richard and Mary Ann O'Hara with a $500,000 limit for all claims.  During the policy period, Jessica O'Hara, the daughter of Richard and Mary Ann O'Hara and an insured under the policy, was involved in an accident while driving her parents' vehicle.  Jessica's vehicle collided with a vehicle driven by Robert Hilgenbrinck.  As a result of the accident, a number of people were injured.  Those suffering physical injuries included Robert and Mary Hilgenbrinck and their grandson Andrew Hilgenbrinck, as well as Megan Lovelace and Melissa Wingerter
, who were passengers in Jessica's vehicle.  Robert's vehicle was also damaged, as well as a tree at the site of the accident.

The injuries resulting from the accident were severe.  For example, Lovelace suffered a spinal fracture, leaving her paralyzed from the waist down.  According to a letter from the Hilgenbrincks' counsel, the Hilgenbrincks suffered injuries as well.  Mary's arm was nearly severed; her leg and ankle were fractured.  Robert sustained broken facial bones, a skull fracture, and a broken jaw.  Andrew Hilgenbrinck suffered a fractured rib, a nearly severed ear, and internal injuries. 

Two days after the accident, OneBeacon Insurance Company (OneBeacon), an affiliate of Western States, hired the firm of GAB Robins to investigate the accident on its behalf.  On November 20, 2001, David K. Carter, a claims examiner with OneBeacon, contacted Michael J. Duffy with the law firm of Tressler, Soderstrom, Maloney & Priess (Tressler firm).  The Tressler firm was hired to represent Western States in regard to its obligations to the O'Haras following the accident.  Neither Duffy nor anyone from the Tressler firm provided legal advice to the O'Haras regarding the accident.

Western States paid $10,101 to settle the property-damage claim for Robert's vehicle.  Western States also paid $480 to settle a claim for property damage to a tree at the site of the accident.   

Western States also paid $489,419 to settle the claim based on Lovelace's injuries.  This payment purportedly exhausted the $500,000 policy limit.  Before settling the Lovelace claim, Western States contacted counsel for the O'Haras, F. Donald Heck, Jr., by telephone and letter.  According to Western States' brief on appeal, Heck was hired by Western States to represent Jessica in the criminal proceedings following the accident.  The letters, dated February 7, 2002, and March 29, 2002, solicited input from Heck and confirmed Heck's agreement to settle the Lovelace claim.  The O'Haras did not object to the settlement. 

On July 15, 2003, the Hilgenbrincks filed a lawsuit against Jessica.  The Hilgenbrincks sought damages for injuries allegedly sustained in the accident.  

Upon notification of the lawsuit, Western States retained counsel to defend Jessica under a reservation of rights.  On October 20, 2003, Western States filed suit, seeking a declaratory judgment that it had no obligation to defend or indemnify Jessica in the Hilgenbrinck action because the policy limits had been exhausted by settling the Lovelace claim.  The O'Haras filed a counterclaim, with claims including breach of contract and bad-faith refusal to settle, as well as affirmative defenses.  The Hilgenbrincks asserted affirmative defenses.   

Discovery began.  Defendants served interrogatories and requests for production on Western States.  In its January 30, 2004, response, Western States asserted certain materials were protected by the attorney-client and work-product privileges.  Western States, for example, refused to produce documents relevant to its consideration of claims against the O'Haras and documents related to the settlement of the Lovelace claim.  

On February 9, 2005, the O'Haras responded to Western States and asserted Western States' objections to the production lacked reasonable basis.  The O'Haras asked Western States to supplement its discovery responses.

Western States subsequently produced a 21-page privilege log, as well as additional documents.  The parties dispute the sufficiency of the privilege log, which describes the substance of documents as, for example, "regarding coverage claim," "regarding claim status," "regarding setting reserve," and "regarding coverage opinion."  

Following correspondence between the parties, which did not resolve the dispute, on March 23, 2004, the O'Haras moved to compel production or, in the alternative, for an 
in
 
camera
 inspection of those documents Western States claimed to be protected.  In its motion, the O'Haras asserted Western States had waived any protection of privilege and work product by placing at issue whether the settlement with Lovelace was reached in good faith.  The O'Haras further asserted the privilege did not protect discovery by them under the common-interest doctrine.  The Hilgenbrincks also moved to compel production of these documents.

On April 26, 2004, the trial court granted the O'Haras' motion to compel.  The court concluded "the insured has a right to see these files and that the privilege is--claim of privilege is, in fact, defeated."  The court further held "there is a common interest and that it is at issue" and concluded the declaratory action should not go forward without Western States sharing the information.  On the common-interest doctrine, the court further held, "I don't think Tressler or Western States can insulate themselves from the advice and coverage obligations by hiring the Tressler firm and hiring the separate firm to represent O'Hara."  

As to the Hilgenbrincks, the trial court did not grant the motion to compel in its entirety.  The court acknowledged the distinction in Western States' relationship with the O'Haras and its relationship with the Hilgenbrincks.  The court ordered Western States to disclose "in totality as to David Carter, Shirley LeFever, and Michael Duffy as responded to in their answer to interrogatory [No.] 9."  (Western States' response to interrogatory No. 9 listed Carter, LeFever, and Duffy as the individuals involved in the decision to settle the Lovelace claim.)  In addition, according to the terms of the order, the court held, as to the remaining documents, the court would perform an 
in
 
camera
 inspection to determine if further disclosure is necessary.  The documents were to be produced within 15 days.

On May 12, 2004, the trial court found the privilege log to be inadequate and lacking "the necessary specificity pursuant to Supreme Court Rule 201(n) [(166 Ill. 2d R. 201(n))] as to the description of the nature of documents."  The court essentially reiterated its April 26, 2004, order. 

Western States refused to comply with the orders.  On June 7, 2004, the trial court again ordered Western States to produce the documents the court had ordered it to produce.  The court gave Western States until June 28, 2004, to comply.  The court granted Western States' motion for leave to file an amended privilege log.   

Western States filed an amended privilege log, which the O'Haras assert is insufficient.  Western States made no further production.  

On July 12, 2004, a hearing was held on the production.  The trial court stated it had received the documents Western States produced for the 
in
 
camera
 inspection.  The court and Western States had different views on what was to be produced to the court.  The court believed it would be reviewing a greater number of documents, including the documents it had already ordered to be produced to the Hilgenbrincks.  Western States, however, applied the language of the order and produced for 
in
 
camera
 inspection those documents it had not been ordered to produce.  In other words, Western States did not produce to the trial court the documents relating "to David Carter, Shirley LeFever, and Michael Duffy as responded to in their answer to interrogatory [No.] 9."  

From the documents the trial court did receive, the court, at that hearing, found "[t]here would be only nominal items I would consider to the Hilgenbrincks based on 
in
 
camera
 I conducted."  In addition, the court stated, "I guess I was surprised there was not much there.  It would be an exercise in futility to have it go to the appellate court."   

The trial court, finding Western States failed to comply with its orders to produce, held Western States in civil contempt and ordered it to pay $500 in fines.  The court called the order a "friendly contempt order" to "let the appellate court sort this out." 

This appeal followed. 

II. ANALYSIS

In Illinois, the propriety of a discovery order may be considered on appeal through the appeal of an order of contempt.  See 
Youle v. Ryan
, 349 Ill. App. 3d 377, 380, 811 N.E.2d 1281, 1283 (2004)
; see also 155 Ill. 2d R. 304(b)(5).  The standard of review for contempt orders is abuse of discretion.  
In re Marriage of Herkert
, 245 Ill. App. 3d 1068, 1073, 615 N.E.2d 833, 836-37 (1993); see also 
Youle
, 349 Ill. App. 3d at 380, 811 N.E.2d at 1283 ("Discovery rulings are generally within the trial court's discretion[,] and we will not disturb such decisions absent an abuse of that discretion").  

Here, the ultimate issue on appeal is whether the trial court erred in ordering the disputed materials produced.  Because Western States argues discovery of the disputed documents is protected under the attorney-client privilege and as work product, we address each alleged protection separately.  See 
Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.
, 189 Ill. 2d 579, 584, 727 N.E.2d 240, 243 (2000).  Moreover, because this case involves opposing parties in the Hilgenbrinck suit, parties with opposing interests, we address each defendant separately.

A. The O'Hara Defendants

1. 
Attorney-Client
 
Privilege

Under the attorney-client privilege, when "legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure."  
Fischel & Kahn
, 189 Ill. 2d at 584, 727 N.E.2d at 243.  The privilege encourages "full and frank consultation between a client and [counsel] by removing the fear of compelled disclosure of information."  
Consolidation Coal Co. v. Bucyrus-Erie Co.
, 89 Ill. 2d 103, 117-18, 432 N.E.2d 250, 256 (1982).  The privilege, however, is not unlimited.  The privilege can be waived.  See, 
e.g.
, 
Fischel & Kahn
, 189 Ill. 2d at 584, 727 N.E.2d at 243-44. In reviewing a claim of privilege, we keep in mind "the privilege, not the duty to disclose, *** is the exception."  
Waste Management, Inc. v. International Surplus Lines Insurance Co.
, 144 Ill. 2d 178, 190, 579 N.E.2d 322, 327 (1991).  Illinois has "a strong policy of encouraging disclosure."  
Waste Management
, 144 Ill. 2d at 190, 579 N.E.2d at 327.  We therefore strictly confine the privilege "within its narrowest possible limits."  
Waste Management
, 144 Ill. 2d at 190, 579 N.E.2d at 327. 

The O'Haras contend the disputed materials are not protected by the attorney-client privilege.  The O'Haras argue the common-interest doctrine, as articulated in 
Waste Management
, demonstrates no protection is provided by the attorney-client privilege.  

Western States argues the common-interest doctrine does not apply and 
Waste Management
 is distinguishable.  Western States emphasizes the Tressler firm represented only its interests in interpreting Western States' obligations under the policy.  Western States maintains the Tressler firm did not represent the O'Haras and provided them no advice.  Western States further contends the trial court's ruling to the contrary "annulled the basis of the adversarial system, leaving litigants in this state to wonder whether the advice given by their counsel *** will truly be protected from disclosure to their adversaries."

Waste Management
 involved an insurance dispute.  Under the policy in 
Waste Management
, the insurers agreed to indemnify the insureds for certain costs arising from third-party claims.  
Waste Management
, 144 Ill. 2d at 185, 579 N.E.2d at 324-25.  Two lawsuits were relevant to the decision: the Miller lawsuit and the Nunn lawsuit.  
The insureds hired counsel and settled the Miller lawsuit.  The insureds then sought indemnification from the insurers.  
Waste Management
, 144 Ill. 2d at 186, 579 N.E.2d at 325.  

In a declaratory-judgment action, a discovery dispute arose over documents the insureds claimed to be protected by the attorney-client privilege and the work-product doctrine.  
The insurers sought the production of the defense counsel's files from both the Miller and Nunn lawsuits.  The insureds produced some but withheld others.  
Waste Management
, 144 Ill. 2d at 187, 579 N.E.2d at 325.  On appeal, our supreme court considered whether the documents were protected by either the attorney-client privilege or the work-product doctrine.

The supreme court concluded the documents were not protected.  The court did so by first relying on the cooperation clause appearing in the policy--an argument irrelevant to the dispute here.  See 
Waste Management
, 144 Ill. 2d at 192, 579 N.E.2d at 327-28. 

The supreme court then found "equally compelling" the insurers' argument the attorney-client privilege was unavailable under the common-interest doctrine.  
Waste Management
, 144 Ill. 2d at 193, 579 N.E.2d at 328.  The court set forth the doctrine and emphasized its applicability in the insurance context:  

"[U]nder the common[-]interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. [Citations.]  This is especially so where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer."  
Waste Management
, 144 Ill. 2d at 193, 579 N.E.2d at 328.  

The court then concluded the insurers and the insureds shared a common interest "in defeating or settling the claim against insureds" and "the communication by insureds with defense counsel is of a kind reasonably calculated to protect or to further those common interests."  
Waste Management
, 144 Ill. 2d at 194, 579 N.E.2d at 328.  

The 
Waste Management
 court rejected the insureds' attempt to argue the doctrine did not apply because the insurers did not participate in the settlement.  The court acknowledged in the typical common-interest-doctrine case, the attorney represents both parties.  The court held, however, "we believe that the doctrine may properly be applied where the attorney, though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer."  
Waste Management
, 144 Ill. 2d at 194, 579 N.E.2d at 329.

We are unpersuaded by Western States' arguments.  Western States' claim that Jessica was represented by separate counsel and thus their interests were not "common" rings hollow.  Western States, in its appellant brief, contradicts this claim.  Jessica's counsel Heck, Western States admits, "represented Jessica *** with respect to the potential criminal charges against her."  Despite Heck's being Jessica's criminal attorney, Western States asserts it "communicated with [Heck] in regards to civil liability issues as well."  Yet, the record does not establish Heck was counseling the O'Haras on the insurance or other civil issues.  

By asking this court not to apply the common-interest doctrine, Western States is asking us to sanction the procedure of leaving insureds unprotected by the aid of appropriate legal counsel, while at the same time working to protect its own interests at the sake of its insureds.  Western States has cited no case to show Illinois would permit such a practice.  

We find the common-interest doctrine applies.  Like the insureds and insurers in 
Waste Management
, Western States and the O'Haras shared a common interest in settling or defeating the Lovelace claim.  The Tressler firm, though not representing the O'Haras, was sought to give advice on settling this claim--a claim in which the O'Haras, as the insureds, had an interest.  Under 
Waste Management
, both the insured and the insurer do not have to be privy to or involved in the communications with counsel for counsel to be acting in the interests of both.  See 
Waste Management
, 144 Ill. 2d at 194, 579 N.E.2d at 328-29.  The trial court properly ordered the disputed documents produced to the O'Haras.  

2. 
Work
 
Product

The work-product doctrine provides broader protection than the attorney-client privilege.  
Shapo v. Tires 'N Tracks, Inc.
, 336 Ill. App. 3d 387, 394, 782 N.E.2d 813, 819 (2002).  Materials or documents protected under this doctrine include those "prepared by or for a party in preparation for trial."  166 Ill. 2d R. 201(b)(2).  Such materials are "subject to discovery only if [they do] not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney."  166 Ill. 2d R. 201(b)(2).  The work-product doctrine "is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts."  
Waste Management
, 144 Ill. 2d at 196, 579 N.E.2d at 329.  Materials otherwise protected under the work-product doctrine are discoverable "upon a showing of impossibility of securing similar information from other sources."  
Waste Management
, 144 Ill. 2d at 196, 579 N.E.2d at 330.  

Waste Management
 establishes the work-product doctrine  affords no protection of the disputed documents from discovery by the O'Haras.  In 
Waste Management
, the court focused on the shared interests of the insured and the insurer, as well as the absence of an adversarial process at the time the materials were created, when it found the work-product doctrine did not apply: 

"[T]he sought-after materials were, in the first instance, prepared for the mutual benefit of insureds and insurers against a third-party adversary.  Insurers were not the adversary from whom the attorney's trial strategies and opinions required protection.  Insurers and insureds have only become adversarial since the termination of the primary litigation.  While the work-product materials, had they been requested by the third-party opponent in the underlying lawsuit, would have been entitled to protection, that same protection is not warranted here.  This, we firmly believe, was not the situation contemplated by 
Hickman 
[
v.Taylor
, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947),] and Rule 201(b)(2) [(166 Ill. 2d R. 201(b)(2))]."  
Waste Management
, 144 Ill. 2d at 198, 579 N.E.2d at 330.  

This analysis applies equally here.  The trial court did not err in ordering the documents disclosed to the O'Haras.

B. The Hilgenbrinck Defendants

On January 20, 2005, after the briefing in the case was complete, Western States moved to strike the Hilgenbrincks' appellee brief in whole or in part.  Western States argues, in part, the Hilgenbrincks' statement of facts was inappropriate.  We recognize the Hilgenbrincks included facts irrelevant to our consideration on appeal, but we decline the request to strike the Hilgenbrincks' brief.  We emphasize, however, the extraneous facts did not influence our decision here.  

As to the issues on appeal, the common-interest doctrine is of no use to the Hilgenbrincks.  At no time did Western States or the Hilgenbrincks share a common interest.  The Hilgenbrincks assert, however, they are entitled to the disputed documents because Western States waived the privilege when it placed the advice of counsel at issue in the dispute.  The Hilgenbrincks argue Western States cannot secure the declaratory judgment without proving good faith, which, they contend, requires an examination of the reasons for the decision to settle.  

Western States first challenges the Hilgenbrincks' standing.  Western States cites 
Yelm v. Country Mutual Insurance Co.
, 123 Ill. App. 2d 401, 259 N.E.2d 83 (1970), 
as holding a third-party creditor cannot seek payment beyond the policy limits by arguing the payment or settlement was in bad faith. 

We find the Hilgenbrincks have standing to challenge Western States' assertion it need not indemnify the O'Haras.  As the Hilgenbrincks point out, 
Yelm
 is distinguishable.  In 
Yelm
, the plaintiff secured a judgment against the insured for the plaintiff's injuries.  The plaintiff sued the insured's insurer and sought damages for the negligent failure to settle her claim.  
Yelm
, 123 Ill. App. 2d at 402, 259 N.E.2d at 83.  The court held that absent an assignment of the claim by the insured to the plaintiff, who was the judgment creditor, the plaintiff had no actionable claim against the insurer.  
Yelm
, 123 Ill. App. 2d at 403-06, 259 N.E.2d at 84-85.  

An argument like the one raised by Western States was rejected in 
State Farm Mutual Automobile Insurance Co. v. Murphy
, 38 Ill. App. 3d 709, 348 N.E.2d 491 (1976).  In 
Murphy
, the insurer, like Western States, sought a declaration it was not liable because the policy limits had been exhausted.  The 
Murphy
 insurer also argued one of the injured lacked standing under 
Yelm
.  The 
Murphy
 court rejected this argument after finding the act of seeking a declaration, coupled with naming the third party as a defendant, gave the injured the right to challenge the insurer's good faith in the declaratory-judgment action.  
Murphy
, 38 Ill. App. 3d at 711-12, 348 N.E.2d at 493-94.

We agree with the analysis in 
Murphy
.  Western States named the Hilgenbrincks as defendants.  The sought-after declaration directly affects the Hilgenbrincks.  They have standing to challenge the proposed declaratory judgment.

Having found the Hilgenbrincks have standing, we turn to the question whether Western States waived the privilege by placing advice from the Tressler firm at issue.  No party disputes that the privilege can be waived had Western States placed the legal advice regarding the Lovelace claim at issue.  See 
Fischel & Kahn
, 189 Ill. 2d at 584, 585-86, 727 N.E.2d at 243-44; see also 
Shapo
, 336 Ill. App. 3d at 394, 782 N.E.2d at 819 ("the attorney-client privilege *** may be waived as to a communication put 'at issue' by a party who is a holder of the privilege").  The parties do dispute, however, whether Western States placed "at issue" either the question of good faith or the legal advice. 

First, as to whether good faith is at issue, Western States contends it is not.  Western States asserts defendants have failed to cite any case that found an insurance carrier acted in bad faith when the carrier paid its limits.  Western States further contends payment of $489,419 to a paralyzed passenger cannot be in bad faith.  

On appeal from the discovery order, this court is not deciding whether Western States' decision to settle is in good or bad faith.  That issue is better left for a motion to dismiss or summary judgment.  Instead, we are to decide whether "good faith" is an issue of the declaratory-judgment action.  We find it is.  

Under Illinois law, it is well established that an insurer has the right to settle claims against the insured.  See 625 ILCS 5/7-317(f)(3) (West 2000).  Only when a settlement is made in good faith, however, is the settlement amount "deductible from the limits of liability specified in the policy."  See 625 ILCS 5/7-317(f)(3) (West 2000); see also 
Adduci v. Vigilant Insurance Co.
, 98 Ill. App. 3d 472, 475, 424 N.E.2d 645, 648 (1981) ("If a judgment in excess of the insured's policy limits [results from bad-faith failure to settle], the insurer may then be held liable for the full amount of the judgment irrespective of the insured's policy limits").  In addition, although there is a presumption the insurer acted in good faith, it is clear the act of seeking a declaration exposes Western States to claims the settlement was not reached in good faith.  See 
Murphy
, 38 Ill. App. 3d at 712, 348 N.E.2d at 494.  

By contending the settlements exhausted the policy limits in the declaratory judgment, Western States placed "good faith" at issue.  A court cannot give Western States the relief it seeks without first finding those settlements were made in good faith. 

We turn now to the question whether the sought-after communications were placed "at issue" or whether they are simply "relevant" to the dispute.  Keeping in mind Illinois's strong policy of encouraging discovery, we find the communications were placed at issue.  Western States has held up its actions and decision in regard to the settlement of the Lovelace claim to the trial court and asked it to find Western States is no longer obliged to its insureds, the O'Haras.  To allow Western States to say only certain reasons and actions are at issue, while others may be kept secret, asks the court to find good faith on only part of the picture.  Such an approach is manifestly unfair.  By asking the court to find it exhausted the policy limits, Western States asks the court to find good faith, which can only be fairly determined based on the reasons and motives underlying that decision.  The trial court did not err in ordering the documents relating to Carter, LeFever, and Duffy disclosed.  

Like the protections provided by the attorney-client privilege, the work-product protections may be waived if they are placed "at issue" in the dispute.  See 
Shapo
, 336 Ill. App. 3d at 394, 782 N.E.2d at 819.  The above analysis applies equally here.  We need not reiterate it.  The work-product doctrine affords Western States no protection from discovery of these documents by the Hilgenbrincks.

We note, although not designated by Western States as an issue of the case, Western States argues the trial court erred by not conducting an 
in
 
camera
 inspection of the disputed documents.  Repeatedly in its brief, Western States emphasizes the trial court, after reviewing documents 
in
 
camera
, "was surprised at how few of those items reviewed it would even consider having produced to the Hilgenbrincks."  Western States uses this quote to suggest had the court taken the time to review the remaining documents, it may not have ordered them produced.  Western States' assertions are troubling, as they take the trial court's "surprise" out of context.  Upon our review of the record, the surprise occurred because the trial court received far fewer documents than it expected.  The court did not receive for review any of the documents related to Carter, LeFever, or Duffy.  To suggest little was relevant based on what the court reviewed is misleading, as most of what would be relevant was not provided.

It appears from the trial court's comments and surprise at that 
July 12, 2004, hearing, the court intended to inspect all of the documents before turning them over to the Hilgenbrincks.  This approach appears inconsistent with the plain language of the earlier order.  It is unclear whether the trial court will undertake an 
in
 
camera
 inspection on return of these proceedings.  We did not hold one is necessary but note it may be beneficial to the parties if the trial court proceeds as it had planned.

C. Privilege Log

The sufficiency of the privilege log is irrelevant to this appeal, as we have found the disputed documents are discoverable.

III. CONCLUSION

Because the trial court did not err in ordering Western States to produce the disputed materials, we find the court's civil-contempt order was not an abuse of discretion.  Western States, emphasizing the friendly nature of the contempt order, asks this court to vacate that order.  Neither defendant argues this request should be denied.  The record, however, does not show that the disputed documents have been produced or that Western States has complied with the discovery orders.  We decline Western States' request.  We note, however, by the terms of the order of contempt, Western States will be purged of contempt when it produces the documents. 

Affirmed; cause remanded.

McCULLOUGH, J., concurs.

COOK, P.J., dissents.

PRESIDING JUSTICE COOK, dissenting:

Can an insurance company employ its own attorney to advise it regarding its duty in a particular case to defend, to settle in good faith, and its exposure to damages in excess of its policy limits? 

The basic rule is that where an insurer retains an attorney to defend its insured, that attorney represents both the insured and the insurer and communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties.  
Waste Management
, 144 Ill. 2d at 194, 579 N.E.2d at 328-29 (common-interest doctrine).  
Waste Management
 extended the doctrine somewhat, allowing disclosure to the insurer under an indemnity policy although the insureds retained the counsel and defended and settled the lawsuit without the participation of the insurer.  The insurer, however, was ultimately liable for defense and settlement costs.  
Waste Management
, 144 Ill. 2d at 194-95, 579 N.E.2d at 329.  
Waste Management
 does not hold that the insurer or insured may not hire independent counsel.

The present case does not involve combined representation, disclosure from an attorney whom the insurer retained to defend a lawsuit for the insured but disclosure from the insurer's separate attorney.  In fact, the O'Haras, during oral argument, suggested that Western States' communications with in-house general counsel would be equally discoverable with the discovery of the Tressler firm ordered here. 

Waste Management
 recognized that the attorney who represented the common interests of the insurer and the insured eventually represented only the insured: 
 "Our holding here does not, in any event, abrogate the privileged nature of communications concerning the present declaratory action."  
Waste Management
, 144 Ill. 2d at 195, 579 N.E.2d at 329.  "[W]ork product generated in preparation for the pending declaratory action is entitled to protection."  
Waste Management
, 144 Ill. 2d at 198, 579 N.E.2d at 330.  It seems clear, under 
Waste Management
, that the insured could have employed independent counsel, immediately after the claim arose, to prepare for the declaratory-judgment action as long as the insurer was not liable for those defense costs.  The 
insurer
 in that case actually had retained its own counsel well in advance of the declaratory-judgment action; there was no suggestion that the work of that attorney was not privileged.  The same should be true here, where it was immediately apparent there would be claims in excess of the policy limits.  Western States should have been allowed to employ an attorney to prepare for the declaratory-judgment action immediately after the accident, so long as that attorney was not the attorney retained by it to represent the insureds.  

We should not allow the "at issue" exception to the work-product rule to be expanded beyond the situation where the sought-after material is either the basis of the lawsuit or the defense thereof.  See 
People v. O'Banner
, 215 Ill. App. 3d 778, 793, 575 N.E.2d 1261, 1270 (1991) (communications with an attorney are put in issue when a criminal defendant asserts ineffective assistance of counsel).  It is fair to ask a settling attorney why he settled.  It is not fair to ask an insurer's general counsel what problems she sees with a case.  In every case the theories, mental impressions, and litigation plans of the party's attorney will be valuable to the opponent.  "Mere convenience, however, should not justify waiver of the attorney-client privilege."  
Fischel & Kahn
, 189 Ill. 2d at 590, 727 N.E.2d at 246.  The fact that the materials will be helpful, even dispositive, is not enough to avoid the work-product rule.  An expansive holding of the "basis of the lawsuit" exception will result in the complete destruction of the work-product privilege.  When a doctor is sued for malpractice and his attorney advises him on the strengths and weaknesses of the case, that advice goes to the basis of the lawsuit.  The same is true in all litigation.  No one will have a right to an attorney if the exception is carried that far. 

Murphy
 did not hold that an insurer loses its right to separate counsel when it files a declaratory-judgment action.  
Murphy
 held only that a noninsured injured party, who normally has no standing to question the manner in which the insurer discharged its obligations to its insured, has standing to raise the issue of good faith when it is named as a defendant in a declaratory-judgment action filed by the insurer.  
Murphy
, 38 Ill. App. 3d at 712, 348 N.E.2d at 494.  The insurer in 
Murphy
 hired separate counsel, and no suggestion was made that the attorney-client and work-product privileges did not apply.       

There is an argument that the only instance permitting disclosure of opinion work product is when the party seeking disclosure "demonstrates the absolute impossibility of securing similar information from other sources."  
Consolidation Coal Co.
, 89 Ill. 2d at 111, 432 N.E.2d at 253.
  It was unnecessary for 
Waste Management
 to consider that argument because of its holding that the work-product rule did not apply in the combined-representation case before it.  
Waste Management
, 144 Ill. 2d at 200, 579 N.E.2d at 331.  This is not a combined-representation case, and discovery of separate counsel's file here should not be the first option.     

Nothing here appears to justify the extraordinary discovery employed.  No indications of bad faith jump out in this case.  The insurer paid the policy limits and obtained a release from the most seriously injured party for a settlement that appears to be favorable to the insured.  Defendants initiated their discovery by immediately going after the opposing attorney's file.  We should not allow such an approach.  It is not enough to justify discovery of an opposing attorney's file that a party has been unable to come up with any support for its case.  The O'Haras argue that Western States should not have settled the claim with Lovelace, that it should have filed an interpleader and deposited the policy limits in court.  However, an insurer cannot discharge its duty to defend by unilaterally tendering its policy limits to the court or a claimant.  On the other hand, an insurer that has exhausted its policy limits by payment of a judgment or settlement is no longer obligated to defend the insured.  
Douglas v. Allied American Insurance
, 312 Ill. App. 3d 535, 540-41, 727 N.E.2d 376, 380-81 (2000).      

The individual(s) who settled the Lovelace claim should be required to submit to discovery.  Perhaps Western States' adjuster did not settle the claim with Lovelace as it says he did.  Perhaps the Tressler firm's involvement in the Lovelace settlement was greater than Western States says it was and the Tressler firm was actually representing both Western States and its insured.  Defendants should begin their discovery, however, with the depositions of the Western States employees.  If that discovery indicates involvement of the Tressler firm in the Lovelace settlement, further discovery may be sought.  Western States' right to counsel should not be summarily destroyed.