ILLINOIS EMCASCO INSURANCE COMPANY, Plaintiff-Appellant, v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)    No. 1—08—1625

Opinion filed August 6, 2009.

Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, of Chicago (Francis A. Spina and Kristina M. Beck, of counsel), for appellant.

Clausen Miller, P.C., of Chicago (Edward M. Kay, Steven N. Novosad, and Don R. Sampen, of counsel), for appellee.

JUSTICE STEELE delivered the opinion of the court:

Plaintiff, Illinois Emcasco Insurance Company (Emcasco), appeals orders of the circuit court of Cook County compelling production of certain documents and imposing a monetary sanction after finding Emcasco in contempt of court. The circuit court entered these orders after Emcasco refused to produce documents containing communications between Emcasco and its coverage counsel in a declaratory judgment action against defendant Nationwide Mutual Insurance Company (Nationwide), on the ground that the documents were protected from discovery by the attorney-client privilege. For the following reasons, we vacate the circuit court's orders and remand the case for further proceedings.

## BACKGROUND

The record on appeal discloses the following facts. Triumph Development Corporation (Triumph) was the general contractor for

the construction of a commercial building in Elk Grove, Illinois. Triumph was an insured on two policies issued by Nationwide: a commercial general liability policy with a liability limit of $2 million per occurrence, and a commercial umbrella policy with a liability limit of $10 million per occurrence and in the aggregate. Triumph was an insured on two policies issued by Emcasco: a commercial general liability policy with a liability limit of $1 million per occurrence, and a commercial umbrella policy with a liability limit of $5 million per occurrence. Triumph was an insured on the Emcasco policies pursuant to the contracts Triumph required of Midwestern Steel Sales, Inc. (Midwestern), a subcontractor for the construction project in Elk Grove.

In March 1998, Harold Orange, an ironworker employed by a subcontractor to Midwestern, was injured on the construction project. Orange later filed suit against Triumph and Midwestern in the circuit court of Cook County (Orange litigation). Triumph tendered the suit to Nationwide, which in turn tendered the case to Emcasco. On June 3, 1998, Emcasco accepted the defense of Triumph under a reservation of rights. However, after Triumph asserted that the reservation created a conflict of interest and sought to appoint independent counsel, Emcasco withdrew its reservation in August 1998. Emcasco appointed the firm of O'Connor, Schiff & Myers to represent Triumph, and the firm of Garretson & Santora to represent Midwestern.

In November 2001, the Orange litigation went to trial. On November 9, 2001, the jury returned a verdict in favor of Orange, awarding $7,173,500 in damages, of which 95% was apportioned to Triumph. Emcasco paid the 5% apportioned to Midwestern from its primary policy coverage. The judgment against Triumph was compromised in a negotiated settlement, the terms of which are not of record.

On December 6, 2001, Emcasco filed this declaratory judgment action against Nationwide, seeking to apply the Nationwide policies to partially pay the judgment entered against Triumph. On January 16, 2002, Triumph assigned its rights to pursue claims against Emcasco to Nationwide. On July 8, 2002, Nationwide filed a counterclaim for a declaratory judgment, alleging that Emcasco was required to exhaust its coverage before Nationwide was required to pay on the judgment entered against Triumph in the Orange litigation. Nationwide also claimed that Emcasco had acted in bad faith in its conduct of the Orange litigation, allegedly steering liability away from Midwestern and toward Triumph.

On June 1, 2007, Nationwide filed a motion to compel Emcasco to produce documents requested in pretrial discovery, including (but not limited to):

"All correspondence, documents and records issued by or on behalf of EMCASCO to any person or entity, which bears in any way upon the underlying case or insurance coverage touching upon or in any way related to tenders of defense and/or coverage afforded to [Triumph and]

Any communications, documents and records received by or on behalf of EMCASCO from any person or entity, which bears in any way upon the underlying case or insurance coverage or defense of [Triumph]."

Emcasco refused to produce communications between Emcasco and its coverage counsel at the firm of Cremer, Kopon, Shaughnessy & Spina, asserting the attorney-client privilege, and contested the motion to compel.

Following a hearing on the matter, the trial court entered an order on January 29, 2008, granting the motion to compel, relying on the Illinois Appellate Court's decision in *Western States Insurance Co. v. O'Hara*, 357 Ill. App. 3d 509, 828 N.E.2d 842 (2005). Emcasco filed a motion for reconsideration. On April 18, 2008, the trial court denied the motion for reconsideration in an order stating that the court agreed with the dissent in *Western States*, but was bound to follow the majority opinion. Emcasco refused to comply with the order. Nationwide filed a motion for sanctions, which the trial court granted on June 12, 2008. The trial court fined Emcasco $100 for contempt to facilitate an appeal pursuant to Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)). On June 18, 2008, Emcasco filed a timely notice of appeal to this court.

## DISCUSSION

This is an interlocutory appeal, filed pursuant to Supreme Court Rule 304(b)(5), after Emcasco refused to comply with the trial court's discovery orders, was held in contempt, and was sanctioned. "[I]t is well settled that the correctness of a discovery order may be tested through contempt proceedings." *Norskog v. Pfiel*, 197 Ill. 2d 60, 69, 755 N.E.2d 1, 8 (2001). In such cases, our review of the contempt finding necessarily encompasses a review of the propriety of the underlying order upon which the contempt finding is based. *Norskog*, 197 Ill. 2d at 69, 755 N.E.2d at 8.

Generally, the standard of review for contempt orders is abuse of discretion. *Western States*, 357 Ill. App. 3d at 515, 828 N.E.2d at 846. However, a trial court lacks the discretion to compel the disclosure of privileged information. *In re Marriage of Daniels*, 240 Ill. App. 3d 314, 324, 607 N.E.2d 1255, 1261 (1992). This court applies a *de novo* standard of review in deciding the applicability of the attorney-client privilege. *Hayes v. Burlington Northern & Santa Fe Ry. Co.*, 323 Ill.

App. 3d 474, 477, 752 N.E.2d 470, 473 (2001); *Midwesco-Paschen Joint Venture for the Viking Projects v. IMO Industries, Inc.*, 265 Ill. App. 3d 654, 660, 638 N.E.2d 322, 326 (1994).

■ Under the attorney-client privilege, when "legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure." *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 584, 727 N.E.2d 240, 243 (2000). The privilege encourages "full and frank consultation between a client and [counsel] by removing the fear of compelled disclosure of information." *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 117-18, 432 N.E.2d 250, 256 (1982). However, the privilege can be waived. See, *e.g., Fischel & Kahn*, 189 Ill. 2d at 584, 727 N.E.2d at 243-44. In reviewing a claim of privilege, we keep in mind "the privilege, not the duty to disclose, *** is the exception." *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190, 579 N.E.2d 322, 327 (1991). Illinois has "a strong policy of encouraging disclosure." *Waste Management*, 144 Ill. 2d at 190, 579 N.E.2d at 327. Thus, we construe the privilege "within its narrowest possible limits." *Waste Management*, 144 Ill. 2d at 190, 579 N.E.2d at 327.

In this case, the parties do not dispute that the Fourth District's decision in *Western States* is on point, but disagree on whether that case was correctly decided. The trial court disagreed with the decision in *Western States*, but followed it. A decision of the appellate court is binding on the circuit courts throughout the state, but not binding on other appellate districts. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539, 605 N.E.2d 539, 542 (1992). Accordingly, we turn to consider whether we agree with the analysis and reasoning of the *Western States* decision.

In *Western States*, the Fourth District relied primarily on the Illinois Supreme Court's decision in *Waste Management*, which involved another insurance dispute. Under the policy in *Waste Management*, the insurers agreed to indemnify the insureds for certain costs arising from third-party claims. *Waste Management*, 144 Ill. 2d at 185, 579 N.E.2d at 324-25. Two lawsuits were relevant to the decision: the Miller lawsuit and the Nunn lawsuit. The insureds hired counsel, settled the Miller lawsuit, then sought indemnification from the insurers. *Waste Management*, 144 Ill. 2d at 186, 579 N.E.2d at 325.

In a declaratory judgment action, the insurers sought the production of the defense counsel's files from both the Miller and Nunn lawsuits. The insureds produced some documents, but withheld others, claiming they were protected by the attorney-client privilege and the work-product doctrine. *Waste Management*, 144 Ill. 2d at 187, 579

N.E.2d at 325. On appeal, our supreme court concluded the documents were not protected. In reaching its conclusion, the court first relied on the cooperation clause appearing in the policy. *Waste Management*, 144 Ill. 2d at 192, 579 N.E.2d at 327-28. No such clause is at issue in this case.

■ The supreme court then ruled that the attorney-client privilege was inapplicable due to the common-interest doctrine:

> "[U]nder the common[-]interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. [Citations.] This is especially so where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer." *Waste Management*, 144 Ill. 2d at 193, 579 N.E.2d at 328.

The court concluded that the insurers and insureds shared a common interest "in defeating or settling the claim against insureds" and "the communication by insureds with defense counsel is of a kind reasonably calculated to protect or to further those common interests." *Waste Management*, 144 Ill. 2d at 194, 579 N.E.2d at 328.

However, the court also stated that "[o]ur holding here does not, in any event, abrogate the privileged nature of communications concerning the present declaratory action." *Waste Management*, 144 Ill. 2d at 195, 579 N.E.2d at 329. Indeed, the court concluded:

> "We hold, only, that the attorney-client privilege and work-product doctrine are not applicable to bar disclosure of defense counsel's files in either the Miller or Nunn litigations. The protections are, nonetheless, available to bar disclosure of any communications or materials generated in preparation for the present declaratory judgment action. Therefore, and consistent with this opinion, on remand, the circuit court should conduct an *in camera* inspection of all of the documents and exclude from disclosure those entitled to protection." *Waste Management*, 144 Ill. 2d at 200-01, 579 N.E.2d at 331-32.

In *Western States*, the circuit court ruled that the common-interest doctrine applied to defeat privilege claims in a declaratory judgment action regarding a firm hired to advise the insurer on coverage issues, stating, " 'I don't think Tressler [coverage counsel] or Western States can insulate themselves from the advice and coverage obligations by hiring the Tressler firm and hiring the separate firm to represent O'Hara [the insured].' " *Western States*, 357 Ill. App. 3d at 513, 828 N.E.2d at 845. On appeal, the Fourth District affirmed:

"We find the common-interest doctrine applies. Like the insureds and insurers in *Waste Management*, Western States and the O'Haras shared a common interest in settling or defeating the Lovelace claim. The Tressler firm, though not representing the O'Haras, was sought to give advice on settling this claim—a claim in which the O'Haras, as the insureds, had an interest. Under *Waste Management*, both the insured and the insurer do not have to be privy to or involved in the communications with counsel for counsel to be acting in the interests of both. See *Waste Management*, 144 Ill. 2d at 194, 579 N.E.2d at 328-29. The trial court properly ordered the disputed documents produced to the O'Haras." *Western States*, 357 Ill. App. 3d at 517, 828 N.E.2d at 848-49.

Presiding Justice Cook dissented, disagreeing with the majority's interpretation of the case law:

"The present case does not involve combined representation, disclosure from an attorney whom the insurer retained to defend a lawsuit for the insured but disclosure from the insurer's separate attorney. In fact, the O'Haras, during oral argument, suggested that Western States' communications with in-house general counsel would be equally discoverable with the discovery of the Tressler firm ordered here.

*Waste Management* recognized that the attorney who represented the common interests of the insurer and the insured eventually represented only the insured: 'Our holding here does not, in any event, abrogate the privileged nature of communications concerning the present declaratory action.' *Waste Management*, 144 Ill. 2d at 195, 579 N.E.2d at 329. '[W]ork product generated in preparation for the pending declaratory action is entitled to protection.' *Waste Management*, 144 Ill. 2d at 198, 579 N.E.2d at 330. It seems clear, under *Waste Management*, that the insured could have employed independent counsel, immediately after the claim arose, to prepare for the declaratory-judgment action as long as the insurer was not liable for those defense costs. The *insurer* in that case actually had retained its own counsel well in advance of the declaratory-judgment action; there was no suggestion that the work of that attorney was not privileged. The same should be true here, where it was immediately apparent there would be claims in excess of the policy limits. Western States should have been allowed to employ an attorney to prepare for the declaratory-judgment action immediately after the accident, so long as that attorney was not the attorney retained by it to represent the insureds." (Emphasis in original.) *Western States*, 357 Ill. App. 3d at 522-23, 828 N.E.2d at 852-53 (Cook, P.J., dissenting).

However, Presiding Justice Cook did not rule out all possibility of discovery:

"The individual(s) who settled the Lovelace claim should be required to submit to discovery. Perhaps Western States' adjuster did not settle the claim with Lovelace as it says he did. Perhaps the Tressler firm's involvement in the Lovelace settlement was greater than Western States says it was and the Tressler firm was actually representing both Western States and its insured. Defendants should begin their discovery, however, with the depositions of the Western States employees. If that discovery indicates involvement of the Tressler firm in the Lovelace settlement, further discovery may be sought. Western States' right to counsel should not be summarily destroyed." *Western States*, 357 Ill. App. 3d at 524, 828 N.E.2d at 854 (Cook, P.J., dissenting).

We conclude that the Fourth District's interpretation of the common-interest doctrine in *Western States* conflicts to some degree with the Illinois Supreme Court's decision in *Waste Management*. As Justice Cook correctly noted in his dissent, the Illinois Supreme Court consistently distinguished between nonprivileged communications regarding the underlying litigation, and privileged communications regarding the coverage issues that could arise in a subsequent declaratory judgment action. See *Waste Management*, 144 Ill. 2d at 200-01, 579 N.E.2d at 331-32. Moreover, the fact that the declaratory judgment action may be filed later does not mean that the coverage issues may not arise from the outset of a dispute. The *Waste Management* court preserved the privilege for coverage issues, despite the fact that discovery was directed at counsel directly involved throughout the underlying litigation.

■ Given that in this case, the trial judge wrote that she agreed with Justice Cook's dissent in *Western States*, we note that—depending on how it is read—the dissent may itself be overly broad. The hiring of separate coverage counsel may tend to compartmentalize communications that should be deemed privileged under *Waste Management*. However, there is no guarantee that, in a particular case, separate coverage counsel will not engage in communications with the insurer regarding the issues in and the conduct of the underlying litigation. *Western States* mistakenly assumes that coverage counsel *always* acts for the mutual benefit of both the insurer and the insured. We would be equally mistaken to assume that coverage counsel *never* makes communications in the common interest of the insurer and the insured. In *Waste Management*, the Illinois Supreme Court resolved the issue by providing that the circuit court would conduct an *in camera* inspection of the documents sought and exclude from disclosure those entitled to protection. *Waste Management*, 144

Ill. 2d at 200-01, 579 N.E.2d at 331-32. We see no reason why the supreme court's approach should not be followed, regardless of whether separate coverage counsel is hired. The issue is the nature of the communication, not the location of the counsel's office.

In sum, we conclude that *Waste Management* preserves the attorney-client privilege for communications between Emcasco and its attorneys regarding the coverage issues arising in this declaratory judgment action. However, *Waste Management* also provides for the trial court to conduct an *in camera* inspection to resolve disputes over which communications are privileged.

Nationwide raises two additional arguments in favor of affirming the trial court. First, Nationwide argues that Emcasco was estopped to assert any coverage issues. Second, Nationwide argues that any privilege in this case was defeated by the "at issue" doctrine. Emcasco responds that Nationwide forfeited these arguments by failing to raise them in the trial court. Nationwide replies by citing the general rule that "this court may affirm the decision of the trial court based on any reason appearing in the record, regardless of the trial court's basis." *Yoder v. Ferguson*, 381 Ill. App. 3d 353, 385, 885 N.E.2d 1060 1087 (2008).

Nationwide overlooks that this is an appeal from a contempt finding and fine, imposed for failure to comply with the trial court order granting Nationwide's motion to compel. Nationwide's motion was brought pursuant to Illinois Supreme Court Rule 219. 210 Ill. 2d R. 219(c). An order imposing sanctions under Rule 219(c) "shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." 210 Ill. 2d R. 219(c). This court has relaxed that requirement in cases where the sanction was entered pursuant to a written motion, as this court assumed that the reasons for the sanction were those set out in the motion. See, *e.g.*, *Chabowski v. Vacation Village Ass'n*, 291 Ill. App. 3d 525, 528, 690 N.E.2d 115, 117 (1997). Nationwide's motion to compel was confined to the common-interest doctrine, as were the orders appealed from. Affirming the contempt finding and fine for some other reason would run contrary to the purpose of Rule 219(c). Accordingly, we decline to address the additional arguments Nationwide seeks to raise for the first time on appeal.

## CONCLUSION

For all of the aforementioned reasons, the orders of the circuit

court of Cook County are vacated, and the case is remanded for further proceedings consistent with this opinion.

Vacated and remanded.

GALLAGHER and NEVILLE, JJ., concur.