# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Center Partners, Ltd. v. Growth Head GP, LLC*, 2011 IL App (1st) 110381

---

| | |
|---|---|
| Appellate Court Caption | CENTER PARTNERS, LTD., URBAN-WATER TOWER ASSOCIATES, MIAMI ASSOCIATES, L.P., and OLD ORCHARD LIMITED PARTNERSHIP, All Illinois Limited Partnerships, Individually and Derivatively on Behalf of Urban Shopping Centers, L.P., Plaintiffs-Appellees, v. GROWTH HEAD GP, LLC, WESTFIELD AMERICA LIMITED PARTNERSHIP, WESTFIELD AMERICA, INC., WESTFIELD AMERICA TRUST, ROUSE-URBAN, LLC TRCGP, INC., THE ROUSE COMPANY, L.P., THE ROUSE COMPANY, ROUSE LLC, GGP L.P. AND GENERAL GROWTH PROPERTIES, INC., Defendants-Appellants (Urban Shopping Centers, L.P., Head Acquisition L.P., SPG Head GP, LLC, Simon Property Group, LP, and Simon Property Group, Inc., Defendants). |
| District & No. | First District, Second Division<br>Docket No. 1-11-0381 |
| Filed | August 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging the breach of fiduciary and contractual duties by defendants arising from the acquisition of a business in which plaintiffs were minority limited partners, the trial court properly ordered defendants to disclose all of the attorney-client communications concerning the negotiations for the acquisition, even those not disclosed between the defendants, since the disclosure of the communications to a third party during the transaction resulted in the waiver of all attorney-client communications concerning the same subject matter. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-L-12194; the Hon. Charles R. Winkler, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tabet DiVito & Rothstein, of Chicago (Gino L. DiVito, Karina Zabicki DeHayes, and Brian C. Haussman, of counsel), and Debevoise & Plimpton LLP, of New York, New York (John S. Kiernan, Carl Riehl, and William H. Taft V, of counsel), for appellants Growth Head GP, LLC, Westfield America Limited Partnership, Westfield America, Inc., and Westfield America Trust. |
| | Grippo & Elden LLC, of Chicago (Lynn H. Murray, Laura K. McNally, and Pei Y. Chung, of counsel), Weil, Gotshal & Manges LLP, of New York, New York (David Lender, *pro hac vice*, of counsel), and Weil, Gotshal & Manges LLP, of Boston, Massachusetts (Thomas C. Frongillo, *pro hac vice*, and Ardith M. Bronson, *pro hac vice*, of counsel), for appellants Rouse-Urban, LLC, TRCGP, Inc., Rouse Company, L.P., Rouse Company, Rouse LLC, GGP L.P., and General Growth Properties, Inc. |
| | Kirkland & Ellis LLP, of Chicago (Jeffrey L. Willian, Alyssa A. Qualls, and S. Maja Fabula, of counsel), for appellee. |
| Panel | JUSTICE KARNEZIS delivered the judgment of the court, with opinion. Presiding Justice Cunningham and Justice Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendants Growth Head GP, LLC, Westfield America Limited Partnership, Westfield America, Inc., Westfield America Trust, Rouse-Urban, LLC, TRCGP, Inc., The Rouse Company, L.P., The Rouse Company, Rouse LLC, GGP L.P. and General Growth Properties, Inc., appeal from the circuit court's order in favor of plaintiffs Center Partners, Ltd., Urban-Water Tower Associates, Miami Associates, L.P., and Old Orchard Limited Partnership, all Illinois limited partnerships, individually and derivatively on behalf of Urban Shopping Centers, L.P., which compelled the disclosure of certain attorney-client privileged

communications.[1] On appeal, defendants contend that (1) the disclosure of privileged communications during a business negotiation did not result in a subject-matter waiver of all attorney-client communications concerning the same subject matter; (2) the scope of the subject-matter waiver as determined by the court was excessive; and (3) certain communications are not discoverable because they are protected by the attorney work-product doctrine. For the following reasons, we affirm.

¶ 2                                          Background

¶ 3        Plaintiffs and defendants are in the business of owning and operating numerous shopping malls across the country. Due to the complex nature of the companies involved in this case, we will refer to defendants Westfield America Trust, Westfield America, Inc., Westfield America Limited Partnership and Growth Head GP, LLC, collectively as "Westfield." We will refer to defendants Rouse-Urban, LLC, TRCGP, Inc., The Rouse Company, L.P., The Rouse Company, Rouse LLC, GGP L.P. and General Growth Properties, Inc., collectively as "Rouse." We will refer to defendants Simon Property Group, LP, and Simon Property Group, Inc., collectively as "Simon."

¶ 4        In 2001 and 2002, over the course of several months, Westfield, Rouse and Simon negotiated to purchase the assets of a Dutch company known as Rodamco North America, N.V. (Rodamco). One of Rodamco's assets was defendant Head Acquisition, L.P. (Head), which was the general partner of plaintiff Urban Shopping Centers, L.P. (Urban). Plaintiffs are minority limited partners of Urban. Westfield, Rouse and Simon entered into a purchase agreement with Rodamco in January 2002. On the same day, Westfield, Rouse and Simon entered into a separate joint purchase agreement with one another that concerned the allocation of Rodamco's assets and the purchase price each of them would pay. The purchase of Rodamco closed in May 2002. Also on that day, Westfield, Rouse and Simon executed an amended Head partnership agreement that included provisions allocating control over Urban's numerous mall interests among themselves.

¶ 5        Plaintiffs subsequently filed suit alleging breach of fiduciary and contractual duties related to the purchase of Rodamco's assets, specifically the acquisition of Head. Plaintiffs sought the discovery of communications between Westfield, Rouse and Simon concerning the acquisition of Head and how they agreed to operate and collect revenue from the various shopping malls owned by Urban. Westfield and Rouse acknowledged that during the negotiations leading up to the purchase of Rodamco, they shared among one another legal advice each of them received from their attorneys regarding the purchase. Westfield acknowledges specifically that they, along with Rouse and Simon, disclosed (1) their attorneys' positions on particular terms of the transaction; (2) certain communications from their attorneys in written documents; and (3) certain legal views concerning specific aspects of the transaction and the structure for allocating control over Urban's mall interests among one another.

---

[1]Defendants Urban Shopping Centers, L.P., Head Acquisition L.P., SPG Head GP, LLC, Simon Property Group, LP, and Simon Property Group, Inc., do not appeal from the court's order.

¶ 6        In October 2008, plaintiffs filed their first motion to compel the attorney-client communications that were disclosed among Westfield, Rouse and Simon during their negotiations to purchase Rodamco. The motion did not seek those undisclosed attorney-client communications. The circuit court granted plaintiffs' motion to compel, ordering Westfield, Rouse and Simon to produce attorney-client communications that had been shared among one another during the negotiations.

¶ 7        In April 2010, plaintiffs filed another motion to compel. This motion, which gave rise to this appeal, sought all of the attorney-client communications concerning the purchase negotiations, even those communications that were not disclosed among Westfield, Rouse and Simon. The motion requested the production of over 1,500 documents identified in defendants' privilege logs. Plaintiffs maintained that because certain attorney-client communications were disclosed among Westfield, Rouse and Simon, a subject-matter waiver occurred as to all of the communications regarding the purchase of Rodamco, even those not disclosed. The circuit court conducted an *in camera* review of some of the requested documents and granted the motion. After denying Westfield's motion for reconsideration, Westfield's counsel advised the court that it would not produce the documents and requested to be held in "friendly contempt." The court entered a contempt order against Westfield. Westfield and Rouse appeal separately from the court's order compelling disclosure of the requested documents and communications.

¶ 8                                          Analysis

¶ 9        In this appeal, we must first determine whether disclosing attorney-client communications with a third party during a business transaction results in the waiver of all attorney-client communications concerning the same subject matter.

¶ 10       Westfield and Rouse maintain that disclosing certain communications within the context of a business negotiation did not result in a subject-matter waiver as to all communications regarding the purchase of Rodamco.

¶ 11       Before we determine whether there was a subject-matter waiver of certain communications, we must address the applicable standard of review of the contempt order. Generally, the standard of review for contempt orders is abuse of discretion. *Western States Insurance Co. v. O'Hara*, 357 Ill. App. 3d 509, 515 (2005). However, because a trial court lacks the discretion to compel the disclosure of privileged information, we apply a *de novo* standard of review in determining the applicability of the attorney-client privilege. *Illinois Emcasco Insurance Co. v. Nationwide Mutual Insurance Co.*, 393 Ill. App. 3d 782, 785 (2009).

¶ 12       The attorney-client privilege provides that when "legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure." *Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 584 (2000). The purpose of the attorney-client privilege "is to enable a person to consult freely and openly with an attorney without any fear of compelled disclosure of the information communicated." *In re Marriage of Decker*, 153 Ill. 2d 298, 312-13 (1992). Nevertheless, the privilege is to be construed "within

-4-

its narrowest possible limits." *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 190 (1991). Illinois adheres to a "strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Waste Management*, 144 Ill. 2d at 190. The party claiming the attorney-client privilege bears the burden of presenting factual evidence that establishes the privilege. *Cox v. Yellow Cab Co.*, 61 Ill. 2d 416, 419-20 (1975).

¶ 13        Notwithstanding the application of the privilege, the privilege can be waived by the client when the client voluntarily discloses the privileged information to a third party. *Illinois Emcasco Insurance Co.*, 393 Ill. App. 3d at 786; *Decker*, 153 Ill. 2d at 313. The scope of the waiver extends to all communications relating to the same subject matter. *In re Grand Jury January 246*, 272 Ill. App. 3d 991, 997 (1995); *People v. O'Banner*, 215 Ill. App. 3d 778, 793 (1991). Most courts refer to this type of waiver as the subject-matter waiver doctrine. The doctrine requires a party who discloses some privileged communication to reveal all privileged communications on the same subject matter.

¶ 14        In Illinois, as far back as 1914, our supreme court recognized subject-matter waiver with respect to attorney-client privilege. In *People v. Gerold*, 265 Ill. 481 (1914), our supreme court held that when a client voluntarily testifies to confidential communications between himself and his attorney, the waiver extends to those communications concerning the same subject matter as the disclosed communications. *Gerold*, 265 Ill. at 448. The following cases also illustrate the subject-matter waiver doctrine. In *In re Grand Jury January 246*, this court held that where a client discloses in a deposition portions of her conversation with her attorney, the disclosure amounts to a waiver of the attorney-client privilege as to the remainder of the conversation or communication about the same subject matter. *In re Grand Jury January 246*, 272 Ill. App. 3d at 997. In *O'Banner*, this court held that where a defendant has taken the stand and testified as to portions of conversations with her attorney, this conduct amounts to a waiver of the attorney-client privilege as to the remainder of the conversation or communication about the same subject. *O'Banner*, 215 Ill. App. 3d at 793.

¶ 15        Here, in 2001 and 2002, when Westfield, Rouse and Simon disclosed privileged attorney-client communications among one another regarding the purchase of Rodamco and specifically the acquisition of Head, those disclosures resulted in a subject-matter waiver of all privileged communications regarding the purchase. Westfield, Rouse and Simon discussed over the course of several months, the purchase of Rodamco and how they would structure the purchase. Defendants disclosed among one another their attorneys' positions on specific terms of the transaction and the structure for allocating control over Urban's mall interests, as well as various written documents containing privileged attorney-client communications. These disclosed communications and documents are clearly waived, and the scope of the waiver extends to all communications relating to the same subject matter, *i.e.*, the purchase of Rodamco. Similar to the above cases of *Gerold*, *In re Grand Jury January 246* and *O'Banner*, when Westfield, Rouse and Simon disclosed certain attorney-client communications among each other, this resulted in a subject-matter waiver of all of the attorney-client communications regarding the purchase of Rodamco.

¶ 16        Although defendants maintain that the above cases are distinguishable because the disclosures in those cases occurred in the context of litigation rather than a business

negotiation, we find no reason to distinguish between a waiver occurring during the course of litigation or during a business negotiation. Once the privileged communication is disclosed to a third party, the privilege is waived, and the scope of the waiver extends to all communications relating to the same subject matter. We uphold the court's order requiring the discovery of all of the communications relating to the purchase of Rodamco.

¶ 17    Defendants next maintain that the scope of the subject-matter waiver as determined by the circuit court was excessive. Defendants contend that many of the documents the court ordered disclosed fell outside the subject matter of the waiver.

¶ 18    Here, the circuit court conducted an *in camera* review of some of the documents that were the subject of the motion to compel. Westfield identifies four possible documents that exceeded the scope of the subject-matter waiver, arguing that those documents and many others were unrelated to the purchase of Rodamco and should not be disclosed. Rouse does not specifically identify any documents that exceeded the scope of the subject-matter waiver, but contends that many of Rouse's 279 documents the court ordered disclosed exceeded the scope of the subject-matter waiver.

¶ 19    Defendants have the burden of proving the existence of the privilege. *Cox*, 61 Ill. 2d at 419-20. Additionally, the privilege is to be construed very narrowly. *Waste Management*, 144 Ill. 2d at 190. In light of the circuit court's *in camera* review of the documents in question, if defendants claim that the court's disclosure order was excessive, they have the burden of pointing out the excessive rulings, with specificity. They have not done so. Defendants' minimal arguments on appeal fall short of overcoming their burden. In the absence of specific contentions regarding specific documents, we cannot find that the court's *in camera* review and subsequent determinations regarding the documents and the applicability of the attorney-client privilege were in error. Further, to clarify, we do not hold that disclosure of certain privileged communication during negotiations nullifies *all* privileged communication and information as related to a particular business transaction, but, rather and specifically, as related *only* to the subject matter of the privilege that is already waived.

¶ 20    Lastly, Westfield maintains that even if this court finds a subject-matter waiver, 13 of Westfield's documents are not discoverable because they are protected pursuant to the attorney work-product doctrine. Westfield contends that because it did not disclose these specific documents to Simon or Rouse during the negotiations to purchase Rodamco, it did not waive any work-product protection for the documents.

¶ 21    The work-product doctrine is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts. *Hickman v. Taylor*, 329 U.S. 495 (1947). In Illinois, work-product protection is afforded to those documents generated in preparation for trial or litigation. *Waste Management*, 144 Ill. 2d at 196. The work-product doctrine grants broader protection for documents and communications than is afforded by the attorney-client privilege. *Waste Management*, 144 Ill. 2d at 196.

¶ 22    Here, Westfield's contention that 13 specific documents are afforded work-product protection is without merit because the documents were not generated in preparation for trial or litigation. The documents were prepared to assist or guide Westfield's co-purchase of

Rodamco. At that time, the parties were not involved in litigation. Therefore, the documents fall outside the scope of the work-product doctrine and are discoverable.

¶ 23      Accordingly, we affirm the judgment of the circuit court.

¶ 24      Affirmed.